# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

MATTHEW GROGAN, on behalf of
himself and all others similarly situated,

        Plaintiff,

    v.

AARON'S INC.,

        Defendant.

Case No. 1:18-cv-02821-AT

# PLAINTIFF'S RESPONSE IN OPPOSITION TO
# DEFENDANT'S MOTION TO STAY

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................1

STANDARD ......................................................................................3

BACKGROUND ................................................................................4

ARGUMENT .....................................................................................6

I.    THE FCC'S REQUESTS OR COMMENTS REGARDING THE
      DEFINITION OF AN ATDS DO NOT WARRANT A STAY IN
      THIS CASE. ..............................................................................6

      A.   A Stay Would Be Inefficient And Unnecessary Because
           Plaintiff Received Prerecorded Calls. ...................................6

      B.   Contrary To Aaron's Suggestion, The Definition Of An ATDS
           Is Well Settled. ..................................................................8

      C.   The Definition Of An ATDS Is Not A Matter Of First
           Impression Implicating The FCC's Specialized Expertise Or
           Fact-Finding Abilities. .......................................................11

II.   THE PRIMARY JURISDICTION DOCTRINE, AS APPLIED TO
      THE ISSUE OF "REASSIGNED NUMBERS," DOES NOT
      SUPPORT A STAY, PARTICULARLY WHERE THE LAW IN
      THE ELEVENTH CIRCUIT IS SETTLED..................................12

      A.   It Is Not Clear That Reassigned Numbers Will Be At Issue In
           This Case. ........................................................................12

      B.   The Eleventh Circuit Has Already Ruled On The Question Of
           Reassigned Numbers. .......................................................14

      C.   Any Decision The FCC Might Reach On Reassigned Numbers
           Would Not Apply Retroactively To The Facts Underlying This
           Matter. ............................................................................18

III.  AARON'S APPEAL TO THIS COURT'S INHERENT
      AUTHORITY TO MANAGE LITIGATION BEFORE IT FAILS TO
      SUPPORT A STAY. ................................................................20

      A.   Aaron's Presents No Clear Case Of Hardship. ....................20

      B.   An Indefinite Stay Would Prejudice Plaintiff And Class
           Members. .........................................................................21

# TABLE OF CONTENTS
(continued)

**Page**

CONCLUSION ............................................................................................................ 23

# TABLE OF AUTHORITIES

<u>**Page**</u>

## <u>CASES</u>

*Abante Rooter & Plumbing, Inc. v. Alarm. Com*,
   Case No. 15-cv-06314, 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018) .............8, 9

*ACA Int'l v. Fed. Commc'ns Comm'n*,
   885 F.3d 687 (D.C. Cir. 2018) ......................................... 13, 18, 20, 21

*Alea London Ltd. v. Am. Home Servs., Inc.*,
   638 F.3d 768 (11th Cir. 2011) ...........................................................18

*Alpharma, Inc. v. Pennfield Oil Co.*,
   411 F.3d 934 (8th Cir. 2005)................................................................4

*Am. Tel. & Tel. Co. v. FCC*,
   978 F.2d 727 (D.C. Cir. 1992) ............................................................19

*Ammons v. Ally Financial, Inc.*,
   No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018)..................9

*Breslow v. Wells Fargo Bank, N.A.*,
   755 F.3d 1265 (11th Cir. 2014) ............................................................5

*Chimeno-Buzzi v. Hollister Co.*,
   No. 14-23120-CIV, 2015 WL 11233196 (S.D.Fla. Apr. 9, 2015)......................16

*Doe v. Selection.com*,
   No. 15-CV-02338, 2015 WL 5853700 (N.D. Cal. Oct. 8, 2015) .......................20

*Edwards v. Oportun, Inc.*,
   193 F. Supp. 3d 1096 (N.D. Cal. 2016) ..............................................22

*Frydman v. Portfolio Recovery Assocs., LLC*,
   No. 11 CV 524, 2011 WL 2560221 (N.D. Ill. June 28, 2011) ...........................19

*Garmendiz v. Capio Partners, LLC*,
   No. 8:17-cv-00987-EAK-AAS, 2017 WL 3208621
   (M.D. Fla. July 25, 2017)...................................................................20

*GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*,
   650 F.3d 1257 (9th Cir. 2011) ...............................................................3

*Gosneigh v. Nationstar Mortg., LLC*,
   No. 8:16-CV-3040-T-33AEP, 2017 WL 435818 (M.D. Fla. Feb. 1, 2017)..........7

1617080.1

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Helwig v. Diversified Consultants, Inc.*,
  No. 14-CV-854, 2015 WL 1520916 (W.D. Wis. Apr. 3, 2015) ..........................19

*Herrick* v. *GoDaddy.com LLC*,
  No. CV-16-00254, 2018 WL 2229131 (D. Ariz. May 14, 2018) ...................9, 10

*Hofer v. Synchrony Bank*,
  No. 4:14 CV 1865 CDP, 2015 WL 2374696 (E.D. Mo. May 18, 2015)............19

*Jones v. AD Astra Recovery Servs., Inc.*,
  No. 16-1013, 2016 WL 3145072 (D. Kan. June 6, 2016) ...................................20

*Konopca v. Comcast Corp.*,
  No. 15-6044, 2016 WL 1645157 (D.N.J. Apr. 26, 2016)....................................20

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .................................................................................3, 20

*Leyse v. Bank of Am. Nat. Ass'n*,
  804 F.3d 316 (3d Cir. 2015)................................................................................15

*Maddox v. CBE Group, Inc.*,
  No. 1:17-CV-1909-SCJ, 2018 WL 2327037 (N.D. Ga. May 22, 2018)...............8

*McMillion v. Rash Curtis & Assocs.*,
  No. 16-CV-03396-YGR, 2018 WL 3023449
  (N.D. Cal. June 18, 2018) ........................................................ 6, 8, 10, 11

*Medina v. Nationstar Mortg. LLC*,
  No. 1:16-cv-02036-WSD, 2017 WL 971919 (N.D. Ga. Mar. 13, 2017)..............7

*Mendez v. Optio Solutions, LLC*,\
  No. 16–1882, 2017 WL 914587 (S.D. Cal. Mar. 8, 2017) ..................................20

*Meyer v. Portfolio Recovery Assocs., LLC*,
  707 F.3d 1036 (9th Cir. 2012) .............................................................................9

*Murray v. Diversified Consultants, Inc.*,
  No. 13-3074, 2014 WL 2574042 (M.D. Fla. June 9, 2014) ................................15

*O'Hanlon v. 24 Hour Fitness USA, Inc.*,
  No. 15-01821, 2016 WL 815357 (N.D. Cal. Mar. 2, 2016) ................................21

1617080.1

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*O'Shea v. Am. Solar Sol., Inc.*,
    No. 3:14-CV-00894-L-RBB, 2018 WL 3217735 (S.D. Cal. July 2, 2018)..........9

*Osorio v. State Farm Bank, F.S.B.*,
    746 F.3d 1242 (11th Cir. 2014) .............................................................. 5, 15, 16

*Patriotic Veterans, Inc. v. Zoeller*,
    845 F.3d 303 (7th Cir. 2017), *cert. denied*, 137 S. Ct. 231 (2017).....................22

*Pieterson v. Wells Fargo Bank, N.A.*,
    No. 3:17-cv-02306, 2018 WL 3241069 (N.D. Cal. July 2, 2018)..................6, 17

*Prater v. Medicredit Inc.*,
    45 F. Supp. 3d 1038 (E.D. Mo. 2014).................................................................19

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015).................................................................................3

*Reyes v. BCA Fin. Servs.*,
    No. 16-24077-CIV-GOODMAN, 2018 WL 2220417
    (S.D. Fla. May 14, 2018) .......................................................................................8

*Rodriguez v. DFS Servs., LLC*,
    No. 8:15-cv-2601-T-30TBM, 2016 WL 369052 (M.D. Fla. Feb. 1, 2016)..........8

*Schwyhart v. AmSher Collection Servs., Inc.*,
    182 F. Supp. 3d 1239 (N.D. Ala. 2016).............................................................15

*Sessions v. Barclays Bank of Del.*,
    No. 1:17-CV-01600-LMM, 2018 WL 3134439 (N.D. Ga. June 25, 2018) .........9

*Shehan v. Wells Fargo Bank N.A.*,
    56 F. Supp. 3d 1206 (N.D. Ala. 2014).............................................................16

*Sieleman v. Freedom Mortgage Corp.*,
    No. CV 17-13110 (JBS/JS), 2018 WL 3656159 (D.N.J. Aug. 2, 2018) ..............7

*Sliwa v. Bright House Networks, LLC*,
    No. 2:16-cv-235-FtM-29MRM, 2016 WL 3901378 (M.D. Fla. July 19, 2016) ...8

*Somogyi v. Freedom Mortgage Co.*,
    No. CV 17-6546 (JBS/JS), 2018 WL 3656158 (D.N.J. Aug. 2, 2018) ................7

1617080.1

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Soppet v. Enhanced Recovery Co., LLC*,
  679 F.3d 637 (7th Cir. 2012)...............................................................................15

*Swaney v. Regions Bank*,
  No. 2:13-cv-00544-JHE, 2018 WL 2316452 (N.D. Ala. May 22, 2018).............8

*Swift v. Bank of Am. Corp., NB*,
  No. 3:14-CV-1539-J-20PDB, 2015 WL 13333136
  (M.D. Fla. June 18, 2015) ............................................................................3, 19

*Swope v. Credit Mgmt., LP,\*
  No. 4:12CV832, 2013 WL 607830 (E.D. Mo. Feb. 19, 2013) .............................7

*Terec v. Reg'l Acceptance Corp.*,
  No. 8:16-CV-2615-T-30MAP, 2017 WL 662181
  (M.D. Fla. Feb. 17, 2017) ...................................................................................21

*Thomas v. Ocwen Loan Servicing, LLC*,
  No. 5:17-CV-73-OC-30PRL, 2017 WL 2426846
  (M.D. Fla. June 5, 2017) .....................................................................................21

*Williams v. Bluestem Brands, Inc.*,
  2017 WL 6507226 (M.D. Fla. Dec. 15, 2017)......................................................7

*Williford v. Armstrong World Indus., Inc.*,
  715 F.2d 124 (4th Cir. 1983)................................................................................4

## STATUTES

47 U.S.C. § 227 ............................................................................. 5, 6, 18

## OTHER AUTHORITIES

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014 132 (July 3, 2003) ..................................................11

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559 (Jan. 4, 2008) ...........................................................11

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15-72 (adopted June 18, 2015 and released July 10, 2015)..........11

## INTRODUCTION

Defendant Aaron's, Inc. ("Aaron's") seeks an indefinite stay of this case, based on its apparent hope that the Federal Communications Commission ("FCC") will change its longstanding views on certain TCPA matters in ways that might affect this case. *See* ECF No. 35. More specifically, Aaron's posits that the FCC may: (1) reverse 15 years of precedent and adopt a novel definition of an automatic telephone dialing system ("ATDS") that excludes predictive dialers from the TCPA's reach; and (2) implement some sort of rule which would—contrary to the Eleventh Circuit's jurisprudence—exclude illegal calls made to "reassigned numbers" from the scope of the TCPA.

It is unlikely that the FCC will completely reverse its 15 years of precedent in favor of Aaron's desires.  But, even if the FCC does completely reverse course, it will have essentially no impact on this case.  Plaintiff alleges that Aaron's made pre-recorded calls to his cellular telephone without prior express consent—a separate and independent violation of the TCPA.  Thus, even if the FCC does, at some future date, redefine an ATDS in a manner that excludes Aaron's autodialer, Aaron's would still be liable under the statute.  Thus, the future FCC reconsideration of the ATDS issue provides no grounds for a stay.

The reassigned number issue provides even weaker grounds for a stay, as nothing suggests that reassigned numbers are even at issue here.  Plaintiff's telephone number has not been recently reassigned number—he has had the same cellular telephone number since approximately 2010.  Thus the "implication" that the proposed class consists mostly or entirely of reassigned numbers, ECF # 35-1, at 19-20, has no basis in the record—Plaintiff did not plead it, it is not true for the Plaintiff, and there is no evidence[1] to support that conclusion at this time.  Moreover, binding Eleventh Circuit precedent holds that a call that violates the TCPA is actionable even if it was intended for someone else.  Thus, Aaron's seeks a stay on the basis of: the hypothetical possibility that reassigned numbers are at issue in this case; stacked on the hypothetical chance that the FCC will rule on the reassigned number issue in a manner that is helpful to it; stacked on the hypothetical possibility that the Eleventh Circuit will void its precedent in light of the FCC's decision.  The multiple layers of supposition implicated in this scenario is an insufficient basis to delay this case at all, much less indefinitely.

---

[1] Indeed, although Aaron's bears the burden here, it has produced no evidence (nor could it) showing that Plaintiff's telephone number was recently reassigned, nor even that Plaintiff's telephone number once belonged to an Aaron's customer.

## STANDARD

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).[2] But "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id*. at 254-55.

Here, Aaron's seeks a stay based, in large part, on the principle of primary jurisdiction, which "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the *initial* decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Reid v. Johnson & Johnson*, 780 F.3d 952, 966 (9th Cir. 2015).  "It is useful . . . in instances where the federal courts do have jurisdiction over an issue, but decide that a claim requires resolution of an issue of *first impression*, or of a particularly complicated issue that Congress has committed to a regulatory agency." *GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*, 650 F.3d 1257, 1264 (9th Cir. 2011); *see also Swift v. Bank of Am. Corp., NB*, No. 3:14-CV-1539-J-20PDB, 2015 WL

---

[2] Internal citations and quotations are omitted, and emphasis is added, unless noted otherwise.

13333136, at *2 (M.D. Fla. June 18, 2015) (denying motion to stay TCPA claims pending FCC rulemaking).

Ultimately, the burden rests on Aaron's to justify why Plaintiff should be compelled to stand aside pending *potential new* guidance from the FCC. *See Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). With this in mind, courts are understandably reluctant to invoke the primary jurisdiction doctrine. *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005) ("The doctrine is to be invoked sparingly, as it often results in added expense and delay.").

## **BACKGROUND**

Aaron's's recitation of the factual background of this matter, "Background of the Case and FCC Rulings," ECF No. 35-1 at 3-16, omits two key aspects of this case, each of which counsels against a stay.

First, while Aaron's exclusively focuses on Plaintiff's allegations that it placed calls to cellular telephones using an ATDS, it omits allegations that it delivered prerecorded voice messages, which constitutes a separate violation of the TCPA. *Compare* ECF No. 35-1 at 5-7, 8-10, 12-16 *with* Complaint, ECF No. at 3, ¶ 16 ("On or around December 10, 2017, Plaintiff began receiving numerous autodialed *and pre-recorded* calls on his cellular phone from Aaron's. When

Plaintiff did not pick up the phone, Aaron's *left a prerecorded voicemail* informing him that it was Aaron's corporate office calling, and that Plaintiff should call Aaron's back at 844-677-9518."). Accordingly, even if the FCC reverses its long-held definitions of an ATDS to exclude predictive dialers, this case would still move forward.

Second, while Aaron's extensively discusses the question of "reassigned numbers," *see* ECF No. 35-1 at 7-8, 10-12, it omits any reference to the Eleventh Circuit's opinions defining "called party" under the TCPA. *See Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1267 (11th Cir. 2014) ("During the pendency of this appeal, another panel of this court, faced with the same question, concluded in a published opinion that 'called party,' for purposes of § 227(b)(1)(A)(iii), means the subscriber to the cell phone service. That panel rejected the defendant's contention that called party could mean intended recipient."); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251-53 (11th Cir. 2014). Thus, regardless of what transpires before the FCC, there is binding Eleventh Circuit authority dealing with the precise scenario raised in this case—calls made to non-customers with no relationship to the calling party seeking to reach some third party.

## ARGUMENT

## I.   THE FCC'S REQUESTS OR COMMENTS REGARDING THE DEFINITION OF AN ATDS DO NOT WARRANT A STAY IN THIS CASE.

Aaron's seeks an indefinite stay based on the premise that the FCC may someday redefine an ATDS in a manner that excludes its autodialer. This position is largely irrelevant to Plaintiff's claims and, in any event, lacks support.

### A.   A Stay Would Be Inefficient And Unnecessary Because Plaintiff Received Prerecorded Calls.

Liability here does not hinge on whether Aaron's's dialers constitute an ATDS.  Rather, TCPA liability also extends to Aaron's's use of prerecorded voice to deliver messages. Thus, even if Aaron's autodialer was somehow deemed not to be an ATDS, the TCPA still prohibits the use of "any automatic telephone dialing system *or an artificial or prerecorded voice*. . . ." 47 U.S.C. § 227(b)(1)(A)(iii). Aaron's motion to stay ignores its use of prerecorded voice messages.

Consequently, regardless of any future changes to the FCC's interpretation of what constitutes an ATDS, Aaron's will remain liable:

> Moreover, the primary jurisdiction doctrine requires the Court to consider whether invoking primary jurisdiction would needlessly delay the resolution of claims. Here, that is especially likely to be the case regardless of how long it takes the FCC to complete its process, which experiences teaches could be lengthy, because Plaintiffs have alternatively alleged that Defendant violated the TCPA by making calls using prerecorded messages or artificial voices. . . . Staying the case

when an alternative theory of liability can move forward would unduly postpone adjudication of Plaintiffs' claims. For the reasons discussed above, a stay is not warranted under the primary jurisdiction doctrine."

*Pieterson v. Wells Fargo Bank, N.A.*, No. 3:17-cv-02306, 2018 WL 3241069, at *4 (N.D. Cal. July 2, 2018); *see also McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2018 WL 3023449, at *4 (N.D. Cal. June 18, 2018) (denying materially identical motion to stay post-*ACA Int'l*, in part, because "plaintiffs' TCPA claims are not limited to Rash Curtis' use of an ATDS. They also concern defendant's use of an artificial or prerecorded voice system."); *Somogyi v. Freedom Mortgage Co.*, No. CV 17-6546 (JBS/JS), 2018 WL 3656158 (D.N.J. Aug. 2, 2018) (denying post-*ACA Int'l* motion to stay because it was "doubtful that any new guidance issued by the FCC will be dispositive, or even simplify the issues"); *Sieleman v. Freedom Mortgage Corp.*, No. CV 17-13110 (JBS/JS), 2018 WL 3656159 (D.N.J. Aug. 2, 2018) (same); *Medina v. Nationstar Mortg. LLC*, No. 1:16-cv-02036-WSD, 2017 WL 971919, at *3 (N.D. Ga. Mar. 13, 2017) (Duffey, Jr., J.) (denying stay); *Williams v. Bluestem Brands, Inc.*, 2017 WL 6507226, at *1 (M.D. Fla. Dec. 15, 2017) ("Plaintiff's allegations that Defendant made the calls using 'an artificial or prerecorded voice' rather than an autodialer (Dkt. 1 ¶ 14) would not be impacted."); *Swope v. Credit Mgmt., LP*, No. 4:12CV832, 2013 WL 607830, at *4 (E.D. Mo. Feb. 19, 2013) (denying stay

because "even if the primary jurisdiction doctrine should be invoked for the claims related to the automatic telephone dialing system, plaintiff's claims regarding the use of an artificial or prerecorded voice are appropriately before this court, regardless of the FCC's decision.").[3]

For this reason alone, this Court should deny Aaron's's request for a stay.

### B.    The Definition Of An ATDS Is Well Settled.

While Aaron's does not identify the types of dialing systems that it employs, it suggests that the FCC may redefine an ATDS to exclude those (currently unknown to Plaintiff) systems from the TCPA's reach.  In particular, Aaron's points to jurisprudence regarding "predictive dialers," suggesting the possibility that they will be excluded from the ATDS provisions of the TCPA.  ECF #35-1, at 14-15.  But Aaron's's speculation has no bearing on the still-operative 2003 and 2008 FCC orders that hold that predictive dialers are, in fact, ATDSs.[4]  *See*

---

[3] *See also, e.g.*, *Gosneigh v. Nationstar Mortg., LLC*, No. 8:16-CV-3040-T-33AEP, 2017 WL 435818, at *2 (M.D. Fla. Feb. 1, 2017) (declining to stay TCPA matter where the plaintiff alleged the defendant made "both calls using an ATDS and calls using an artificial or prerecorded voice"); *Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235-FtM-29MRM, 2016 WL 3901378, at *4 (M.D. Fla. July 19, 2016) (same); *Rodriguez v. DFS Servs., LLC*, No. 8:15-cv-2601-T-30TBM, 2016 WL 369052, at *3 (M.D. Fla. Feb. 1, 2016) (same).

[4] Aaron's also argues that the FCC's prior guidance on the definition of an ATDS is now defunct, despite no such language in the *ACA Int'l* opinion, and a majority of courts, including the Northern District of Georgia on multiple occasions, rejecting that position.  *See, e.g.*, *Maddox v. CBE Group, Inc.*, No. 1:17-CV-1909-

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)

("PRA does not dispute that its predictive dialers have the capacity described in the

TCPA. This is sufficient to determine that PRA used an automatic telephone

dialing system*."*); *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-CV-

06314-YGR, 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018) (holding that *Meyer*

"remains valid and binding precedent").

    Aaron's plucks one case from Arizona, *Herrick* v. *GoDaddy.com LLC*,

No. CV-16-00254, 2018 WL 2229131, at *7 (D. Ariz. May 14, 2018), to argue that

controversy remains regarding whether predictive dialers constitute ATDSs. *See*

ECF No. 61-1 at 7, 18-19. But more recently, in *Ammons v. Ally Financial, Inc.*,

---

SCJ, 2018 WL 2327037, at *4 (N.D. Ga. May 22, 2018) (Jones, J.); *McMillion*,
2018 WL 3023449, at *3; *Swaney v. Regions Bank*, No. 2:13-cv-00544-JHE,
2018 WL 2316452, at *2 (N.D. Ala. May 22, 2018) (denying defendant summary
judgment on issue of whether a predictive dialer is an ATDS subsequent to *ACA
Int'l*, noting "the continuing validity of the 2003 FCC Order" and the lack of
human intervention as a basis to deny defendant's motion); *Reyes v. BCA Fin.
Servs.*, No. 16-24077-CIV-GOODMAN, 2018 WL 2220417 (S.D. Fla. May 14,
2018) (holding that the FCC's 2003 and 2008 predictive dialer rulings remain
binding); *Abante Rooter & Plumbing, Inc. v. Alarm. Com*, Case No. 15-cv-06314,
2018 WL 3707283 (N.D. Cal. Aug. 3, 2018) (same); *O'Shea v. Am. Solar Sol., Inc.*,
No. 3:14-CV-00894-L-RBB, 2018 WL 3217735 (S.D. Cal. July 2, 2018) ("The
ACA decision left intact the holding of both the FCC's 2003 and 2008 Order that
an autodialer is an ATDS."); *but see Sessions v. Barclays Bank of Del.*, No. 1:17-
CV-01600-LMM, 2018 WL 3134439, at *4 (N.D. Ga. June 25, 2018) (May, J.)
(denying the defendant's motion for judgment on the pleadings).

No. 3:17-cv-00505, 2018 WL 3134619, at *6 (M.D. Tenn. June 27, 2018), the court expressly rejected the reasoning in *Herrick* for several reasons, the first of which is that "the Court simply disagrees with Herrick's conclusion that [*ACA Int'l*] enables a court to 'not defer to *any* of the FCC pertinent pronouncements' regarding the required functions of an ATDS" given the fact that *ACA Int'l* only addressed the FCC's 2015 guidance. Additionally, the court found *Herrick* to be internally inconsistent in its reliance on FCC analysis, and ultimately distinguishable due to the great deal of human intervention unique to the *Herrick* case's facts. *Id.*; *cf. Herrick*, 2018 WL 2229131, at *9 (noting that there are "multiple stages in the process of sending Plaintiff the text message in which human intervention was involved.").

Also recently, in *McMillion*, a defendant that also used a predictive dialer in a comparable capacity as Wells Fargo sought a stay in light of *ACA Int'l*. In denying the motion, the court noted:

> First, ACA International invalidated only the 2015 FCC Order—the court discusses but does not rule on the validity of the 2003 FCC Order or the 2008 FCC Order. Second, even if the D.C. Circuit had vacated the 2003 and 2008 FCC Orders, ACA International has no bearing on preexisting Ninth Circuit precedent. In 2009, the Ninth Circuit held that for a dialing system to be an ATDS it "need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." In 2012, the court held that "capacity" is not limited to present ability and that "predictive dialers fall squarely within the FCC's definition of 'automatic telephone dialing system.'"

*McMillion*, 2018 WL 3023449, at *3.

Yet Aaron's asks this Court to stay this case, indefinitely, because it believes there is a chance that the FCC may one day undo its interpretation of an ATDS that dates back to 2003.[5] Fundamentally, the settled law on the definition of ATDS does not support Aaron's request for a stay.

**C.   The Definition Of An ATDS Is Not A Matter Of First Impression Implicating The FCC's Specialized Expertise Or Fact-Finding Abilities.**

As previously noted, the primary jurisdiction doctrine applies only where there exists an issue of *first impression* that involves "technical questions of fact uniquely within the agency's expertise and experience." *See supra*, Standard. The

---

[5] *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014 ¶ 132 (July 3, 2003) ("in order to be considered an automatic telephone dialing system, the equipment need only have the capacity to store or produce telephone numbers"); *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, ¶ 12 (Jan. 4, 2008) (rejecting arguments that equipment is an ATDS "only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists"); *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15-72, ¶ 10 (adopted June 18, 2015 and released July 10, 2015) ("We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers.").

definition of an ATDS is not a matter of first impression, as it has been analyzed and ruled on extensively by both the FCC *and* courts nationwide.

In the end, the definition of an ATDS is neither a matter of first impression, nor so complicated that it requires additional FCC expertise. *See McMillion*, 2018 WL 3023449, at *3. Accordingly, this Court should deny Aaron's's motion.

## II.   THE PRIMARY JURISDICTION DOCTRINE, AS APPLIED TO THE ISSUE OF "REASSIGNED NUMBERS," DOES NOT SUPPORT A STAY, PARTICULARLY WHERE THE LAW IN THE ELEVENTH CIRCUIT IS SETTLED.

Aaron's suggests that the FCC may implement some provision for "reassigned numbers," and that this possibility also warrants a stay. This theory fails for multiple reasons.

### A.   It Is Not Clear That Reassigned Numbers Will Be At Issue In This Case.

The heart of Aaron's's argument with regard to reassigned numbers is "Plaintiff alleges that many of Aaron's calls were to individuals it 'presumably believed to be its debtors.' This suggests that many of the numbers Aaron's called were once associated with customers, but have since been reassigned to non-customers." ECF # 35-1, at 1. Aaron's's "suggestion" is wholly speculative.

First, the calls made to Plaintiff were not the result of a reassigned number. Plaintiff has had the telephone number on which he received calls from Aaron's for

since at least 2010.  It is Aaron's's motion and Aaron's's burden, and yet it has not

produced any evidence that Plaintiff's number was recently reassigned nor that

Plaintiff's number once belonged to an Aaron's customer in years past.  Thus,

whatever the explanation is for why Aaron's repeatedly called Plaintiff on his

cellular telephone, it is not that Plaintiff's number recently belonged to an Aaron's

customer.  No FCC order on reassigned numbers will help Aaron's as to the named

Plaintiff.

As to the other members of the potential class, Aaron's gestures in a general

way toward the frequency of reassigned numbers.  ECF # 35-1, at 20 (quoting *ACA

Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 705 (D.C. Cir. 2018), for the

proposition that "millions of wireless numbers are reassigned each year.").  But

Aaron's then leaps from there to the conclusion that the question of reassigned

numbers "will play a significant role in Plaintiff's attempt to certify the purported

class," without any evidence or argumentation to support that conclusion.  *Id.*  By

the same token, surely at least some subset of the members of the proposed class

were called as a result of whatever process or sequence of events led to the calls to

the named Plaintiff.

The extent to which reassigned numbers will play a "significant role" in this

case will be determined through discovery regarding Aaron's's calling program.

In other words, whether the reassigned number issue is "significant" will be determined via the very process that Aaron's seeks to prevent with its motion to stay.

If a case can be stayed because there *might* be an issue that arises that *might* be adjudicated in some other body, then no litigation would ever go forward in any court under any circumstance. If and when there is a discrete issue that will be decided by another body that is central to the outcome of this case, then a stay may be appropriate. But, at this point, a stay on the reassigned numbers issue is premature.

### B.    The Eleventh Circuit Has Already Ruled On The Question Of Reassigned Numbers.

Even if the reassigned number issue is, as Aaron's claims, central to the determination of this matter, there is no need to stay the case pending guidance from the FCC. Rather, the Eleventh Circuit has already weighed in on the question and found that there is no "safe harbor" for calls made based on some mistaken identity. At the heart of the reassigned number question is the proposition that the TCPA defendant is attempting to call a party for whom it has prior express consent, but because the number has been reassigned, the call is received by some other party. This has been framed by TCPA defendants as a question of who the

"called party" is for TCPA purposes—is it the person to whom the defendant was attempting to reach, or the person the defendant actually reached.

Eleventh Circuit case law is unambiguous—the "called party" for TCPA purposes is the party who the TCPA defendant actually called:

> In tune with Judge Easterbrook's analysis, we believe this really means that Betancourt had no authority to consent in her own right to the debt-collection calls to No. 8626 because one can consent to a call only if one has the authority to do so, and only the subscriber (here, Osorio) can give such consent, either directly or through an authorized agent. *We accordingly reject State Farm's argument that the "intended recipient" is the "called party" referred to in 47 U.S.C. § 227(b)(1)(A).*

*Osorio*, 746 F.3d at 1251-53 (citing *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012)).[6]

In doing so, the Eleventh Circuit established binding precedent that there is no "safe harbor" for calls that do not reach their intended target. As the Northern District of Alabama explained in denying a motion to stay a TCPA action premised upon the "called party" issue, any decision regarding the definition of a "called party" under the TCPA is irrelevant in the Eleventh Circuit:

> [R]egardless of how the D.C. Circuit rules in *ACA International*, its decision will have no direct impact on this case. Because the FCC's interpretation of the term "called party" in the FCC Order is consistent with the Eleventh Circuit's decision in *Osorio*, a decision by the D.C.

---

[6] The other circuit courts of appeals to address the issue concur. *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015); *Soppet*, 679 F.3d at 641 (stating that "[c]onsent to call a given number must come from its current subscriber").

Circuit upholding the FCC Order will be in line with existing precedent in this circuit. If, on the other hand, the FCC Order is set aside by the D.C. Circuit, *Osorio* will remain controlling precedent in this case, as the Eleventh Circuit's decision in Osorio was not based on the FCC Order, the calls at issue in this case were made before the FCC Order was issued, and the D.C. Circuit's decision will not, in any event, be binding on this court.

*Schwyhart v. AmSher Collection Servs., Inc.*, 182 F. Supp. 3d 1239, 1242 (N.D. Ala. 2016); *accord Murray v. Diversified Consultants, Inc.*, No. 13-3074, 2014 WL 2574042, at *1 (M.D. Fla. June 9, 2014) (denying motion to stay TCPA case because *Osorio* provides "clear" guidance for numerous matters under the TCPA).

More to the point, several courts in the Eleventh Circuit have applied the rationale of *Osorio* to the reassigned number scenario. As the Northern District of Alabama noted:

> [T]he "UHS Petition asks the FCC to clarify the applicability of the TCPA to calls 'to wireless numbers for which valid prior express consent has been obtained but which, unbeknownst to the calling party, have subsequently been reassigned from one wireless subscriber to another.'" The Eleventh Circuit answered this question in *Osorio [ ]*, rejecting the argument the "intended recipient" is the "called party" for purpose of § 227 and explaining a "called party" means "the subscriber to the cell phone service." Likewise, while Wells Fargo submits the ACA Petition "asks the FCC to ... establish a 'safe harbor for non-telemarketing calls when the debt collector had previously obtained appropriate consent and had no intent to call any person other than the person who had previously provided consent to be called,' ", the Eleventh Circuit foreclosed such a defense in *Osorio*.

*Shehan v. Wells Fargo Bank N.A.*, 56 F. Supp. 3d 1206, 1209 n.3 (N.D. Ala. 2014);

*see also Chimeno-Buzzi v. Hollister Co.,* No. 14-23120-CIV, 2015 WL 11233196,

at *2 (S.D.Fla. Apr. 9, 2015) ("a substantial body of caselaw—most importantly

Eleventh Circuit caselaw—makes it impossible for us to conclude that Defendants

have a substantial likelihood of success on their motion [to dismiss based on

reassigned numbers].")

Finally, it is not clear that the proposed rule-making would conflict with

Eleventh Circuit precedent:

> In addition, the FCC's Second Further Notice of Proposed Rulemaking
> concerns the creation of a database at some point in the future to help
> callers avoid making unwanted calls to individuals who have been
> reassigned a phone number, but does not directly respond to the D.C.
> Circuit's ruling vacating the portion of the 2015 Declaratory Ruling
> related to the treatment of reassigned numbers. While the FCC's notice
> sought comment on whether it should adopt a safe harbor for callers
> who use 'reassigned number solutions that are in the marketplace
> today,' the notice does not state that the FCC intends to craft such a safe
> harbor or implement one in the future. Def.'s RJN, Ex. 3 at 11. Thus, it
> is far from clear that the FCC intends to speak on the issue of reassigned
> calls in any way that is likely to impact this case.

*Pieterson*, 2018 WL 3241069, at *4.

One way or the other, the governing law of this circuit is clear—Aaron's

may not raise a "reassigned number" defense, or any other defense based on

mistaken identity, to the calls it made to Plaintiff and class members.  Only the

Eleventh Circuit can change this jurisprudence, regardless of what happens with

the FCC.  For this reason, staying the case on the basis of the "reassigned

numbers" issue is unwarranted.

C.     **Any Decision The FCC Might Reach On Reassigned Numbers Would Not Apply Retroactively To The Facts Underlying This Matter.**

Finally, Aaron's assumes that a new FCC ruling on reassigned numbers

would apply to the calls at issue in the case.  But as an initial matter,

"[t]he TCPA is essentially a strict liability statute."  *Alea London Ltd. v. Am. Home*

*Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011). Its text includes no safe harbor for

calls made to reassigned telephone numbers, nor does it contain a "reasonable

reliance" exception. *See generally* 47 U.S.C. § 227. As well, the D.C. Circuit

recently struck down the one-call safe harbor that the FCC attempted to engraft

onto the TCPA in 2015. *See ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687,

705 (D.C. Cir. 2018) (setting aside the one-call safe harbor).

Nonetheless, the D.C. Circuit noted that the FCC is "considering whether to

provide a safe harbor for callers that inadvertently reach reassigned numbers after

consulting the most updated information." *Id.* at 709. But even if the FCC puts in

place a future safe harbor, such a safe harbor could not apply retroactively here.

Accordingly, FCC action could not impact *this* case, as "any change by

the FCC in the manner in which it would apply the TCPA would only be

applied prospectively, and it would, therefore, not affect the outcome of this case as Plaintiff seeks damages for past conduct." *Prater v. Medicredit Inc.*, 45 F. Supp. 3d 1038, 1042 (E.D. Mo. 2014) (citing *Am. Tel. & Tel. Co. v. FCC*, 978 F.2d 727, 732 (D.C. Cir. 1992) (holding that rulemaking operates prospectively)); *Swift*, 2015 WL 13333136, at *3 ("After a review of relevant case law, this Court agrees with the Plaintiff that if the FCC does make a ruling, it is likely to be prospective in nature and will not affect Defendants' past conduct which is at issue here.").[7]

Put simply, where, as here, "it is not clear whether any resulting decision of the commission would affect the outcome of this case, which involves a claim for damages for *past* wrongdoing. . . . even if the commission were to decide that there is a safe harbor for unintentional calls to an incorrect or reassigned number, that decision would not be dispositive in this case." *Helwig v. Diversified Consultants, Inc.*, No. 14-CV-854, 2015 WL 1520916, at *4 (W.D. Wis. Apr. 3, 2015).

---

[7] *See also, e.g.*, *Hofer v. Synchrony Bank*, No. 4:14 CV 1865 CDP, 2015 WL 2374696, at *4 (E.D. Mo. May 18, 2015); *Frydman v. Portfolio Recovery Assocs., LLC*, No. 11 CV 524, 2011 WL 2560221, at *6 (N.D. Ill. June 28, 2011).

III.   **AARON'S'S APPEAL TO THIS COURT'S INHERENT AUTHORITY TO MANAGE LITIGATION BEFORE IT FAILS TO SUPPORT A STAY.**

   A.   **Aaron's Presents No Clear Case Of Hardship.**

Separately, Aaron's references this Court's inherent authority to stay cases to manage its docket. ECF No. 35-1 at 24-25. The onus is on Aaron's to show why circumstances justify an unusual exercise of discretion to bring litigation to a standstill. *See Landis*, 299 U.S. at 254-55. Because Aaron's fails to "make a clear case of hardship or inequity in being required to go forward," *Doe v. Selection.com*, No. 15-CV-02338, 2015 WL 5853700, at *3 (N.D. Cal. Oct. 8, 2015), this Court should reject Aaron's motion.  *Id*.; *see also Garmendiz v. Capio Partners, LLC*, No. 8:17-cv-00987-EAK-AAS, 2017 WL 3208621, at *2 (M.D. Fla. July 25, 2017) ("The Defendant bears the burden of establishing that it will suffer a hardship or inequity if forced to proceed.").

At the end of the day, Aaron's makes no showing of any "hardship" or "inequity" to justify the extraordinary relief it now seeks.  *See Mendez v. Optio Solutions, LLC*, No. 16–1882, 2017 WL 914587, at *4 (S.D. Cal. Mar. 8, 2017) (denying a request for a stay pending resolution of *ACA Int'l* in part because

"Defendant [did] not demonstrate a hardship in moving forward with inevitable discovery and motion practice").[8]

### B.   An Indefinite Stay Would Prejudice Plaintiff And Class Members.

On the other hand, granting an indefinite stay *would* harm Plaintiff and proposed class members. To be sure, granting Aaron's's requested stay "would suspend for an indefinite period of time Plaintiff's opportunity—and the opportunity of the putative class—to vindicate their rights before this Court." *O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-01821, 2016 WL 815357, at *5 (N.D. Cal. Mar. 2, 2016).  Obtaining relief in the shortest time possible—without any stay—inures to Plaintiff's benefit, a fact contemplated by the dozens of courts that rejected analogous requests for stays prior to *ACA Int'l. See, e.g.*, *Thomas v. Ocwen Loan Servicing, LLC*, No. 5:17-CV-73-OC-30PRL, 2017 WL 2426846, at *2 (M.D. Fla. June 5, 2017) ("Consistent with this Court's orders in several other cases, the Court concludes a stay under these circumstances will not promote

---

[8] *See also Jones v. AD Astra Recovery Servs., Inc.*, No. 16-1013, 2016 WL 3145072, at *6 (D. Kan. June 6, 2016) (denying a stay pending *ACA Int'l* and finding the "potential that Defendant could engage in greater discovery, if the case is not stayed, does not constitute a 'rare circumstance' which justifies an indefinite stay"); *Konopca v. Comcast Corp.*, No. 15-6044, 2016 WL 1645157, at *4 (D.N.J. Apr. 26, 2016) (denying stay pending *ACA Int'l* where "the only purported 'hardship' identified by Defendant is the possibility that the parties may engage to some extent in unnecessary discovery and/or motion practice").

judicial economy, but it will harm Plaintiff."); *Terec v. Reg'l Acceptance Corp.*,

No. 8:16-CV-2615-T-30MAP, 2017 WL 662181, at *2 (M.D. Fla. Feb. 17, 2017)

("A stay under these circumstances will not promote judicial economy, but it will

harm Plaintiff. . . . There is no compelling reason to require this of Plaintiff. The

stay requested by Defendant is immoderate."); see also Fed.R.Civ.P. 1 (Federal

Rules "should be construed, administered, and employed by the court and the

parties to secure the just, speedy, and inexpensive determination of every action

and proceeding.").

Imposing an indefinite stay here would further prejudice Plaintiff and the

class in light of the likely ongoing telephone calls to class members on whose

behalf Plaintiff seeks relief.  There is more at stake here than a delay in recovering

monetary damages—although that constitutes prejudice in its own right.  *See also*

*Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 305-06 (7th Cir. 2017) ("Every

call uses some of the phone owner's time and mental energy, both of which are

precious.") (emphasis supplied), *cert. denied*, 137 S. Ct. 231 (2017).  Because the

longer it takes to obtain a judgment against Aaron's, the longer Aaron's may

continue its unlawful practices.

Accordingly, this Court should deny Aaron's's motion to stay.  *See*

*Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) ("Because

there is no certain way to determine when a ruling will be forthcoming, and, as *Lathrop* points out, a decision by the D.C. Circuit may not be the end of litigation in *ACA International*, the Court concludes that there is a fair possibility of harm to Plaintiff because the length of the stay is an indefinite one.").

## CONCLUSION

Given the well-settled law regarding misdirected calls under the TCPA and Aaron's's clear use of an ATDS with prerecorded voice messages, this Court should deny Aaron's's motion to stay.

Dated:  September 5, 2018             By:  */s/* L. Lin Wood

                                        L. LIN WOOD, P.C.
                                        L. Lin Wood
                                        State Bar No. 774588
                                        lwood@linwoodlaw.com
                                        G. Taylor Wilson
                                        State Bar No. 460781
                                        twilson@linwoodlaw.com
                                        1180 West Peachtree Street, Ste. 2400
                                        Atlanta, GA 30309
                                        Telephone:   (404) 891-1402
                                        Facsimile:    (404) 506-9111

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice pending*)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice pending*)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (*pro hac vice*)
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Daniel M. Hutchinson (*pro hac vice*)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

*Attorneys for Plaintiff and the Proposed Class and Subclass*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to N.D. Ga. L.R. 5.1.C and 7.1.D, that the

foregoing was prepared in 14-point Times New Roman font.

September 5, 2018.

*/s/* G. Taylor Wilson

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused the foregoing to be electronically

filed with the Clerk of the Court using the CM/ECF system, which will

automatically send notification of such filing to all attorneys of record.

September 5, 2018.

*/s/* G. Taylor Wilson
