**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| MATTHEW GROGAN, on behalf of himself and all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>AARON'S, INC.,<br><br>*Defendant.* | **CIVIL ACTION NO.**<br><br>**1:18-cv-02821-JPB** |

**PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1963560.4

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................1

SUMMARY OF THE SETTLEMENT ..................................................2

LEGAL STANDARD............................................................................3

ARGUMENT .........................................................................................4

I. THE SETTLEMENT IS LIKELY TO BE APPROVED AS FAIR,
   REASONABLE, AND ADEQUATE .........................................4

   A. The Class Representatives and Class Counsel have adequately
      represented the Class. ........................................................5

   B. The Settlement was negotiated at arm's-length without a hint of
      collusion...............................................................................7

   C. The Settlement provides excellent relief. ...........................8

      1. The Settlement is superior to the costs, risks, and delay of
         continued litigation. .................................................9

      2. The method of providing relief is effective and treats all
         members of the Class fairly. ....................................11

      3. The proposed award of attorneys' fees raises no barrier to
         preliminary approval.................................................12

      4. There are no agreements between the parties other than the
         Settlement...................................................................12

   D. The Settlement treats Class Members equitably. ..............13

II. THE SETTLEMENT CLASS IS LIKELY TO BE CERTIFIED............13

   A. The Settlement Class is Objectively Defined and Clearly
      Ascertainable. ...................................................................13

   B. The members of the class are so numerous that joinder of all of
      them is impracticable........................................................14

   C. Questions of law and fact are common to the members of the
      class....................................................................................14

1963560.4

# **TABLE OF CONTENTS**

**Page**

D.    Plaintiffs' claims are typical of the claims of the members of the class they represent. ..........................................................................15

E.    Plaintiffs and Class Counsel are adequate. ......................................16

F.    Questions common to the members of the class predominate over any questions potentially affecting only individual members. .........16

G.    A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the class....18

III.   THE NOTICE PLAN SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS. ..........................................................19

CONCLUSION .....................................................................................................21

1963560.4

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Agnone v. Camden Cty., Georgia,*
  No. 14-00024, 2018 WL 4937061 (S.D. Ga. Oct. 10, 2018) ...............................7

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) .............................................................. 16, 18

*Bennett v. Behring Corp.,*
  737 F.2d 982 (11th Cir. 1984) ..............................................................5

*Burrow v. Forjas Taurus S.A.,*
  No. 16-21606, 2019 WL 4247284 (S.D. Fla. Sept. 6, 2019) ................................5

*Carriuolo v. General Motors Co.,*
  823 F.3d 977 (11th Cir. 2016) .............................................................13

*Columbus Drywall & Insulation, Inc. v. Masco Corp.,*
  258 F.R.D. 545 (N.D. Ga. 2007) ............................................................3

*Cordoba v. DirecTV, LLC,*
  942 F.3d 1259 (11th Cir. 2019) ...........................................................17

*Cross v. Wells Fargo Bank, N.A.,*
  No. 15-1270, Dkt. No. 34-1 (N.D. Ga. Aug. 11, 2016) .......................................8

*Davis v. AT&T Corp.,*
  No. 15-2342, 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) ...............................10

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ......................................................................19

*Faught v. Am. Home Shield Corp.,*
  668 F.3d 1233 (11th Cir. 2011) ...........................................................19

*George v. Acad. Mortg. Corp. (UT),*
  369 F. Supp. 3d 1356 (N.D. Ga. 2019). ........................................................6, 7

*Glasser v. Hilton Grand Vacations Co., LLC,*
  948 F.3d 1301 (11th Cir. 2020) ...........................................................1

iii

# TABLE OF AUTHORITIES

**Page(s)**

*Grant v. Ocwen Loan Serv., LLC*,
    No. 15-01376, 2019 WL 367648 (M.D. Fla. Jan. 30, 2019) ..................................5

*In re Capital One TCPA Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ........................................................................8

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) ............................................................................9

*In re Health S. Corp. Sec. Litig.*,
    334 F. App'x 248 (11th Cir. 2009) ........................................................................13

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ................................................................................3

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483, 493 (N.D. Ill. 2015) .....................................................................8

*Lunsford v. Woodforest Nat'l Bank*,
    No. 12-103, 2014 WL 12740375 (N.D. Ga. May 19, 2014) ................................11

*Malta v. Fed. Home Loan Mortg. Corp.*,
    No. 10-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ......................................8

*Markos v. Wells Fargo Bank, N.A.*,
    No. 15-1156, Dkt. No. 34-1 (N.D. Ga. June 29, 2016) ..........................................8

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ................................................................................14

*Murray v. Auslander*,
    244 F.3d 807 (11th Cir. 2001) ..............................................................................15

*Prather v. Wells Fargo Bank, N.A., et al*,
    No. 15-4231, Dkt. No. 35-2 (N.D. Ga. Feb. 22, 2017) ..........................................8

*Roundtree v. Bush Ross, P.A.*,
    No. 14-357, 2015 WL 5559461 (M.D. Fla. Sept. 18, 2015) .......................... 19, 20

*Sandoe v. Bos. Sci. Corp.*,
    No. 18-11826, 2019 WL 5424203 (D. Mass. Oct. 23, 2019) ...............................10

iv

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Tomeo v. CitiGroup, Inc.*,
No. 13-4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) ................................10

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ...............................................................................17

*Valley Drug. Co. v. Geneva Pharms., Inc.*,
350 F.3d 1181 (11th Cir. 2003)....................................................................16

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009).....................................................................14

*Wilkins v. HSBC Bank Nevada, N.A.*,
No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) .......................................8

**Statutes**

47 U.S.C. § 227 ..................................................................................... passim

**Rules**

Fed. R. Civ. P. 23 .................................................................................. passim

**Other Authorities**

Rubenstein, Newberg on Class Actions (5th ed. 2015) ...........................................3

## **INTRODUCTION**

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits the use of an automatic telephone dialing system ("ATDS") or pre-recorded messages to make calls to cellular telephones without prior express consent.  This case alleges that Defendant Aaron's, Inc. violated the TCPA by making prerecorded calls to individuals who were not Aaron's customers and thus did not provide their prior express consent for the calls.

After 18 months of active discovery and contested litigation, including a filed motion for class certification, the parties mediated the case with respected mediator Rodney A. Max.  After two mediation sessions, the parties settled for an all-cash, non-reversionary common fund of $2,175,000.  This result is excellent considering the risks to so-called "wrong-number" TCPA class actions, and particularly so given that the Eleventh Circuit recently adopted a narrow definition of ATDS, a ruling that threatens to zero out much of the relief sought here.  *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020).

Plaintiffs request that this Court: (1) find that it "will likely" be able to approve the Settlement; (2) find that it "will likely" be able to certify the Settlement Class; (3) approve the notice plan and appoint the parties' selected Claims Administrator, Angeion Group; (4) direct notice to the Class; and (5)

1

establish a schedule for a final approval hearing and attendant dates as set forth in the proposed order.

<u>**SUMMARY OF THE SETTLEMENT**</u>

The Settlement[1] calls for Aaron's to create a non-reversionary cash settlement fund of $2,175,000 to compensate the following Settlement Class:

> All persons in the United States (1) who were the subscribers or customary users of a telephone number that was called by Defendant; (2) with the Genesys Interactive Intelligence System and/or an artificial or prerecorded voice; (3) from June 8, 2014 through the date the Court grants preliminary approval of the Settlement; (4) where that telephone number has been associated with a wrap-up code of "wrong party" at any time in Defendant's records.

The Settlement Fund will be distributed to valid claimants pro rata, after deduction of the costs of notice and claims administration, attorneys' fees and expenses, and any incentive awards to the Class Representatives. Under no circumstances will any money revert to Aaron's.

Class Members can make claims with an easy-to-use online interface or downloadable claim form. *See* Weisbrot Decl. ¶ 20; Settlement Ex. A (claim form). To receive money from the Settlement, Class Members need only provide their name, the telephone number at which they received calls, and affirmation that they received a call from Aaron's at a time they were not a customers of Aaron's.

---

[1] The Settlement is attached as Exhibit 1.

2

Class Members will be given direct notice by mail and email where that information can be derived from Aaron's records, as well as by a targeted Facebook digital notice campaign.  *See* Weisbrot Decl. ¶¶ 12-13; 14-18; 19.  The Claims Administrator was selected after a competitive bid process that maximized value for the Class, including a hard cap on expenses.  Hutchinson Decl. ¶ 37.

Class Members who do not exclude themselves will be bound by a release specifically tailored to the calling practices that gave rise to this matter.  Settlement at ¶¶ 10.02, 11.04 13.01.

## LEGAL STANDARD

The "law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."  Rubenstein, Newberg on Class Actions § 13:44 (5th ed. 2015); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007) ("In reviewing proposed settlements, courts should also bear in mind the judicial policy favoring settlements.").

Rule 23(e), as amended in December 2018, codifies a two-step process of class action settlement approval.  The first step is a preliminary fairness

1963560.4

determination where the parties submit the proposed terms of settlement to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A).

The amended Rule 23 calls for front-loaded scrutiny of a proposed settlement so that any issues are identified before notice goes out to the class. Grounds for class notice exist where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

## ARGUMENT

## I. THE SETTLEMENT IS LIKELY TO BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE

In determining whether a settlement is fair, reasonable, and adequate, the Court considers whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each
other.

Fed. R. Civ. P. 23(e)(2).  Those factors, which encompass the "analogous" *Bennett*

factors previously considered by the Eleventh Circuit, weigh in favor of approval.

*Grant v. Ocwen Loan Serv., LLC*, No. 15-01376, 2019 WL 367648, at *4-5 (M.D.

Fla. Jan. 30, 2019) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.

1984)).

### A.    The Class Representatives and Class Counsel have adequately represented the Class.

Under the first Rule 23(e)(2) factor, courts consider whether the class

representatives and class counsel have adequately represented the Class.  Courts

assessing this factor ask "whether class counsel and plaintiffs 'had an adequate

information base' before negotiating and entering into the settlement."  *Burrow v.*

*Forjas Taurus S.A.*, No. 16-21606, 2019 WL 4247284, at *7 (S.D. Fla. Sept. 6,

2019) (quoting Fed. R. Civ. P. 23(e)(2)(A), advisory comm. n., 2018 amendments).

Here, Plaintiffs entered mediation only after 18 months of active discovery.

Aaron's produced, and Plaintiffs reviewed, more than 3,716 pages of documents

and extensive data files.  Hutchinson Decl. ¶ 25.  Plaintiff deposed two of Aaron's

senior executives under Rule 30(b)(6).  *Id.*  ¶ 25.  Plaintiff Grogan responded to 39

requests for production and 20 interrogatories, and sat for deposition.  *Id.*  ¶ 25.

Expert discovery was likewise extensive.  Plaintiffs retained experts regarding data analytics and telecommunications technology.  *See* Dkt. Nos. 78-4 & 78-5.  Each expert produced a report in support of class certification and responded to subpoenas seeking 31 categories of documents and data.  Hutchinson Decl. ¶ 26.

This case also included extensive motion practice.  Aaron's filed a motion to stay, *see* Dkt. No. 35, which Plaintiffs successfully defeated, *see* Dkt. Nos. 39, 48. Plaintiffs obtained the class-wide "wrong-number call data" essential to class certification and proof on the merits only after filing a motion to compel, *see* Dkt. No. 54, a dispute resolved by agreement only after judicial intervention, *see* Dkt. Nos. 62, 64, 67, 69.  The litigation culminated in Plaintiffs' filing of a motion for class certification supported by expert reports on how wrong-number class members could be identified and on whether the calling technology used by Aaron's met the definition of an ATDS.  In sum, the parties conducted enough discovery to be able to determine the "probability of [their] success on the merits, the range of possible recovery. . . [and] the complexity, expense, and likely duration of the litigation" before negotiating the settlement.  *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1369 (N.D. Ga. 2019).

6

**B.      The Settlement was negotiated at arm's-length without a hint of collusion.**

Under the second Rule 23(e)(2) factor, courts examine whether the parties negotiated the settlement at arm's-length.  Here, the Settlement Agreement resulted from good-faith, arms'-length settlement  negotiations over many months, including two in-person mediation sessions with Mr. Max, a well-respected mediator.  Hutchinson Decl. ¶¶ 31-34; Settlement at ¶ 1.05; *see also, e.g.*, *George*, 369 F. Supp. 3d at 1369-70 ("The parties settled this Action by mediation with an experienced mediator . . . which further confirms that the process was procedurally sound and not collusive."); *Agnone v. Camden Cty., Georgia*, No. 14-00024, 2018 WL 4937061, at *6 (S.D. Ga. Oct. 10, 2018) (preliminarily approving and finding reasonable settlement that resulted from arms'-length negotiations and three mediations). Plaintiffs and Aaron's submitted detailed mediation submissions setting forth their respective views as to the strengths of their cases.  Hutchinson Decl. ¶ 31.  And negotiations were at all times adversarial and often contentious. *Id*.  ¶31.  In fact, the negotiations broke down during the first session in October 2019.  *Id*.  ¶ 32.  Only after the parties returned to litigation for several more months did they ultimately decide to revisit settlement talks in February 2020, which, following two more months of negotiations, ultimately resulted in the proposed class settlement.  *Id*.  ¶ 34.

7

### C.    The Settlement provides excellent relief.

The Settlement provides $2,175,000 in non-reversionary cash, a substantial result in the abstract and when measured against many other TCPA class settlements. This amounts to $7.32 per class member. The number of potential claimants is certainly smaller because the ~297,000 "wrong party" coded numbers may include some numbers belonging to customers.

Even putting that aside, a per-class-member figure of $7.32 compares well with, and is in fact higher than many of TCPA settlements challenging debt collection calls, including ones recently approved in this District. *See, e.g., Prather v. Wells Fargo Bank, N.A., et al*, No. 15-4231, Dkt. No. 35-2 (N.D. Ga. Feb. 22, 2017) ($4.65 per class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-1270, Dkt. No. 34-1 (N.D. Ga. Aug. 11, 2016) ($4.75 per class member); *Markos v. Wells Fargo Bank, N.A.,* No. 15-1156, Dkt. No. 34-1 (N.D. Ga. June 29, 2016) ($4.98 per class member); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($4.41 per class member); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ($4.31 per class member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($1.20 per class member); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) (approximately $4 per class member). Because not every

8

class member will make a claim, the amount of money actually received by each class member who does make one is likely to be much more than $7.32.

Of course, the settlement amount does not constitute the full measure of statutory damages potentially available to the Class. This fact alone, however, should not weigh against preliminary approval. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.") (internal quotation marks omitted).

### 1. The Settlement is superior to the costs, risks, and delay of continued litigation.

Plaintiffs believe that their claims against Aaron's have merit. Nevertheless, Plaintiffs and the Class would face a number of difficult challenges if the litigation were to continue. To take the most obvious, the Eleventh Circuit recently held that the TCPA's definition of an ATDS requires a device to have the capacity to generate numbers at random or in sequence, and that a device that merely dials a stored list of telephone numbers does not meet the definition. *See Glasser*, 948 F.3d at 1306-12. That understanding, if ultimately prevailing, could defeat any ATDS-based claims involving, as here, a device dialing a list of numbers, and would limit the Class to claims based on prerecorded messages only.

9

The Class also faces risk at class certification, denial of which would leave the vast majority of Class Members with no relief at all.  Although many courts have certified so-called "wrong-number" classes, others have declined to do so, finding the class not ascertainable, the individual question of who is a non-customer predominating over common questions, or the process of identifying class members unmanageable.  *See, e.g.*, *Sandoe v. Bos. Sci. Corp.*, No. 18-11826, 2019 WL 5424203 (D. Mass. Oct. 23, 2019) (denying class certification); *Tomeo v. CitiGroup, Inc.*, No. 13-4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) (same); *Davis v. AT&T Corp.*, No. 15-2342, 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) (same).  Further, Aaron's has stated that it intends to challenge, on a call-by-call basis, whether calls that were flagged in Aaron's system as "wrong number" calls were in fact made to non-customers, and thus whether it may have had consent to make those calls.

Plaintiffs have answers to these defenses.  But it is obvious that their likelihood of success at trial is uncertain. And even assuming a certified class, no interlocutory appeal, a denial of summary judgment, and a win at trial, the Class would still face the delay and uncertainty of appeal after final judgment. Accordingly, Plaintiffs' decision to settle their claims, and the claims of Class Members, is reasonable.  *See, e.g.*, *Lunsford v. Woodforest Nat'l Bank*, No. 12-103,

10

2014 WL 12740375, at *8 (N.D. Ga. May 19, 2014) ("Given the innumerable risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot be seen as anything except a fair compromise.").

> **2.     The method of providing relief is effective and treats all members of the Class fairly.**

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief.  Fed. R. Civ. P. 23(e)(2)(C)(ii). This settlement proposes the gold standard in class member relief: non-reversionary cash payments.  The claims process was designed to be accessible and straightforward, but at the same time to deter any unjustified claims without placing undue burdens on Class Members.  In order for those Class Members to make a claim, they need only submit a claim through an easy-to-use online interface or downloadable claim form.  *See* Weisbrot Decl. ¶¶ 20-22; Settlement Ex. A (claim form).   Class Members need provide only their contact information, the phone number called, and simple certification with a signature.  Claimants do not need to attach *any* documentary evidence for claims to be approved.

### 3. The proposed award of attorneys' fees raises no barrier to preliminary approval.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate.  Fed. R. Civ. P. 23(c)(2)(C)(iii).  Plaintiffs' counsel will seek an award of fees no greater than $725,000, one-third of the common fund, using the percentage approach required in this Circuit.  *See Camden I Condo Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991).  As required by Rule 23(h), the Class will be noticed of the amount requested and given opportunity to object before the Court awards any fees.

### 4. There are no agreements between the parties other than the Settlement.

No side agreements required to be identified under Rule 23(e)(2)(c)(iii) exist.  This provision is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others."  Fed. R. Civ. P. 23(e), advisory committee notes 2003 amendments.  Plaintiffs have not entered into any such agreements.  The only separate agreement extant is that containing the opt-out threshold necessary to trigger Aaron's right to terminate the settlement.  Such agreements are not controversial and are typically confidential and not filed in the

public record.  *See, e.g.*, *In re Health S. Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) (The "threshold number of opt outs required to trigger the [termination] provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.").

### D.    The Settlement treats Class Members equitably.

The final factor for approval is whether the Settlement treats Class Members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(D).  The Settlement does: all Class Members have the same right to a pro rata share of the non-reversionary fund.  Settlement at ¶ 4.04.

## II.    THE SETTLEMENT CLASS IS LIKELY TO BE CERTIFIED.

The amended Rule 23 merely requires that "the court will *likely* be able to . . . certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B) (emphasis added).  The Settlement Class meets that standard.

### A.    The Settlement Class is objectively defined and clearly ascertainable.

A "plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable."  *Carriuolo v. General Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (citations omitted).  Here, the Settlement Class comprises only individuals who meet four objective criteria.

13

The Class is "a particular group, harmed during a particular time frame, in a particular location, in a particular way," and thus avoids the problem of a vague class definition. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). And even assuming a plaintiff has some additional burden to show an administratively feasible method of class member identification, that burden is met here where Class Members will be identified through Aaron's records, the "reverse lookup" process undertaken by the Claims Administrator, and self-identification.

### B. The members of the class are so numerous that joinder of all of them is impracticable.

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed numerosity rule, generally "less than twenty-one is inadequate, more than forty is adequate, and numbers falling in between are open to judgment based on other factors." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (citation and alteration omitted). Here, there are approximately 297,000 numbers coded "wrong party" in Aaron's records. Numerosity is likely to be satisfied.

### C. Questions of law and fact are common to the members of the class.

Rule 23(a) also requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A 'common' issue is one that may be proved

14

through the presentation of generalized proof applicable to the class as a whole. *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D.656, 664 (N.D. Ga. 2009) (citing *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). "For purposes of Rule 23(a)(2) even a single common question will do." *Carriuolo,* 823 F.3d at 984 (internal quotation marks and alteration omitted).

Here, the claims of the members of the class stem from the same factual circumstances—autodialed prerecorded calls that Aaron's placed to telephone numbers of non-customers, in alleged violation of the TCPA. Common questions, therefore, include whether the calls at issue were to non-customers and whether the calls violated the TCPA. Consequently, the class likely will satisfy Rule 23's commonality requirement.

## D. Plaintiffs' claims are typical of the claims of the members of the class they represent.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of the class. Fed. R. Civ. P. 23(a)(3). The "typicality" requirement seeks to ensure that a representative plaintiff "possess[es] the same interest and [has] suffer[ed] the same injury shared by all members of the class [s]he represents." *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. at 665 (internal citations omitted). All Plaintiffs in this matter received telephone calls from Aaron's on their cellular telephones, and none of the Plaintiffs were customers of Aaron's. As

15

a result, the Plaintiffs' claims are likely to be typical of the claims of the members of the classes.

### E.    Plaintiffs and Class Counsel are adequate.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Adequacy requires that the class representative have common interests with the members of the class and will vigorously protect the interests of the class through qualified counsel.  *Valley Drug. Co. v. Geneva Pharms., Inc*., 350 F.3d 1181, 1189 (11th Cir. 2003).  Here, Plaintiffs' interests are aligned with those of the Class because they have been harmed by the same common misconduct—prerecorded and automated calls to their cellular phones from Aaron's.  Further, for over a year, Plaintiff Grogan has been, and continues to be, an engaged participant in this litigation, responding to discovery requests and traveling to Atlanta to be deposed.  And Plaintiffs are represented by experienced class action and TCPA counsel.  *See* Hutchinson Decl. ¶¶ 1-7; Wilson Decl. ¶¶ 1-4.  The adequacy requirement is likely to be satisfied.

### F.    Questions common to the members of the class predominate over any questions potentially affecting only individual members.

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Predominance is "readily met"

16

in certain consumer cases. *See id.* at 625. The touchstone for predominance analysis is efficiency. It is not necessary that all questions of law or fact be common; only some questions must be common, and they must predominate over individual questions. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("The predominance inquiry asks whether common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.") (citation omitted).[2]

If common questions "have a direct impact on every class member's effort to establish liability," then predominance is meant. *Cordoba v. DirecTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) (citation omitted). The central questions that drive liability in this case are all common, including whether Aaron's called Class Members' cellular telephones, whether Aaron's calling technology constitutes an ATDS, whether Aaron's could have prior express consent from a non-customers, and whether Aaron's actions were knowing or willful. Predominance is therefore likely to be satisfied.

---

[2] Thus, "when one or more of the central issues in the action are common to the class . . . , the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.*

**G.    A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the class.**

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

No one member of the class has an interest in controlling the prosecution of this action because Plaintiffs' claims and the claims of the members of the class are the same.  Alternatives to a class action would result in either no recourse for many individuals, or a multiplicity of suits precipitating an inefficient and possibly disparate administration of justice.  And because Plaintiffs seek to certify the Class for settlement, this Court need not consider any manageability concerns as it otherwise would.  *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire

18

whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").  Superiority is likely to be satisfied.

## III.  THE NOTICE PLAN SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS.

Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  Notice of a proposed settlement to class members must be the "best notice practicable," Fed. R. Civ. P. 23(c)(2)(B), meaning "individual notice to all members who can be identified through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

 "The adequacy of class notice is measured by reasonableness," and "[t]he notice must provide the class members with information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action."  *Roundtree v. Bush Ross, P.A.*, No. 14-357, 2015 WL 5559461, at *1 (M.D. Fla. Sept. 18, 2015) (quoting *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011)).

Here, the Settlement provides a robust notice program involving direct mail and e-mail notice to class members, targeted digital notice on Facebook, a dedicated settlement website and a toll-free telephone number to be administered by a third-party claims administrator— Angeion Group—that has significant

19

experience in the administration of TCPA class actions. *See* Weisbrot Decl. ¶¶ 8, 23; Settlement Exs. A, C (forms of notice).

The Notice complies with Rule 23 and due process because it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process to object to, or to be excluded from, the class, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding class counsel's request for an award of attorneys' fees and expenses; (6) the procedure for submitting claims to receive settlement benefits for class members from whom claims are necessary; and (7) how to make inquiries and obtain additional information. Fed. R. Civ. P. 23(c)(2)(B); *Roundtree*, 2015 WL 5559461, at *1 ("The class notice provides reasonably adequate information about the nature of the action and the class settlement, and provides sufficient details for class members to determine whether to remain in the class or opt out. Accordingly, the form and content of the class notice are approved.").

## <u>CONCLUSION</u>

Plaintiffs request that this Court: (1) find that it "will likely" be able to approve the Settlement; (2) find that it "will likely" be able to certify the Settlement Class; (3) approve the notice place and appoint the parties' selected Claims Administrator, Angeion Group; (4) direct notice to the Class; and (5) establish a schedule for a final approval hearing and attendant dates as set forth in the proposed order.

Respectfully submitted,

Dated:  April 29, 2020           By: */s/ Daniel M. Hutchinson*
                                 LIEFF CABRASER HEIMANN &
                                 BERNSTEIN, LLP
                                 Jonathan D. Selbin (*pro hac vice*)
                                 Email:  jselbin@lchb.com
                                 250 Hudson Street, 8th Floor
                                 New York, NY  10013
                                 Telephone:  (212) 355-9500
                                 Facsimile:  (212) 355-9592

21

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice*)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Andrew R. Kaufman (*pro hac vice*)
Email:  akaufman@lchb.com
222 Second Avenue South, Suite 1640
Nashville, Tennessee 37201
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice*)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice*)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

WADE, GRUNBERG & WILSON, LLC
G. Taylor Wilson
State Bar No. 460781
twilson@wgwlawfirm.com
1230 Peachtree Street N.E., Ste. 1900
Atlanta, GA 30309
Telephone:   (678) 787-0216

*Attorneys for Plaintiffs and the Proposed Class*

22

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 5.1.C & 7.1.D</u>

Pursuant to L.R. 7.1.D, I certify that this document has been prepared with

14-point, Times New Roman font, approved by the Court in L.R. 5.1.C.

<u>  /s/  Andrew R. Kaufman        </u>

1963560.4

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, April 29, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

 */s/ Andrew R. Kaufman*

1963560.4