# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| MATTHEW GROGAN, LATIA BRYANT, CHAD SEVERSON, AND SERGE BELOZEROV, on behalf of themselves and all others similarly situated, | Case No. 1:18-cv-02821-JPB |
| Plaintiff, | |
| v. | |
| AARON'S INC. | |
| Defendant. | |

## CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS FOR CLASS REPRESENTATIVES

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................1

II. BACKGROUND ....................................................................................3

    A.  The Settlement Fund and cash payments to the Class ........................3

    B.  Class Counsel's prosecution of this matter .........................................4

III. ARGUMENT...........................................................................................6

    A.  Class Counsel should be compensated with a percentage of the common fund created through their efforts...........................................6

    B.  The *Johnson* factors support the requested fee ...................................8

        1.  Class Counsel obtained an excellent result for the Class. .......10

        2.  Class Counsel undertook the litigation at significant risk with no guarantee of recovery..................................................12

        3.  Class Counsel are experienced TCPA and class action lawyers who delivered effective representation to the Class. ......................................................................................15

        4.  The requested fee award aligns with awards in similar cases and with the customary fees in contingent class actions. .....................................................................................17

    C.  The Class Representative Service Awards are reasonable.................19

IV. CONCLUSION.......................................................................................21

# TABLE OF AUTHORITIES

**Page**

### CASES

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018) ........................................................................... 14

*Allapattah Servs., Inc. v. Exxon Corp.*,
    454 F. Supp. 2d 1185 (S.D. Fla. 2006) ...................................................... 16, 18, 19

*Barr v. Am. Ass'n of Political Consultants Inc.*,
    No. 19-631, 2020 WL 3633780 (U.S. July 6, 2020) ........................................... 14

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ............... 17

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................................. 6

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ............................................................... 1, 6, 7, 9

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    No. 04-3066, 2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ............................... 7

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ........................................................................... 20

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
    No. 11-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ............................... 21

*Cross v. Wells Fargo Bank, N.A.*,
    No. 15-1270, Dkt. No. 45-1 (N.D. Ga. Aug. 11, 2016) ..................................... 11

*Cummings v. Sallie Mae*,
    No. 12-9984, Dkt. No. 91 (N.D. Ill. May 30, 2014) ........................................... 19

*Davis v. AT&T Corp.*,
    No. 15-2342, 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) ............................... 15

*Desai v. ADT Sec. Servs., Inc.*,
    11-1925, Dkt. No. 243 (N.D. Ill. June 21, 2013) ............................................... 19

*Dukes v. Air Canada*,
    No. 18-2176, 2020 WL 487152 (M.D. Fla. Jan. 27, 2020).................................. 18

*Facebook, Inc. v. Duguid*,
    No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020)........................................... 14

*George v. Acad. Mortg. Corp. (UT)*,
    369 F. Supp. 3d 1356 (N.D. Ga. 2019)............................................................... 16

*Glasser v. Hilton Grand Vacations Co., LLC*,
    948 F.3d 1301 (11th Cir. 2020) ......................................................................... 14

*Gunthert v. Bankers Standard Ins. Co.*,
    No. 16-00021, 2019 WL 1103408 (M.D. Ga. Mar. 8, 2019)............................... 10

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Hadix v. Johnson*,
  322 F.3d 895 (6th Cir. 2003) ............................................................................... 20

*Hageman v. AT&T Mobility LLC, et al.*,
  No. 13-50, Dkt. No. 68 (D. Mont. Feb. 11, 2015) ................................................ 19

*Hanley v. Fifth Third Bank*,
  No. 12-1612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) ............................................. 19

*Hanley v. Tampa Bay Sports & Ent. LLC*,
  No. 19-550, 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) ................................... 18

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
  No. 17-55555, 2019 WL 2720818 (N.D. Ga. June 6, 2019) ............................. 2, 17

*In re Capital One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................... 11, 19

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................................... 10, 12

*In re Clarus Corp. Sec. Litig.*,
  No. 00-2841 (N.D. Ga. Jan. 6, 2005) ..................................................................... 8

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) ....................................................................... 6, 16

*In re Equifax Inc. Customer Data Security Breach Litig.*,
  No. 17-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *appeals filed*, 11th
  Cir. No. 20-10249 ................................................................................. 7, 13, 16, 17

*In re Food Serv. Equip. Hardware Antitrust Litig.*,
  No. 10-1849, 2011 WL 13175440 (N.D. Ga. Dec. 28, 2011) ................................. 6

*In re Healthtronics Surgical Servs., Inc. Sec. Litig.*,
  No. 03-02800, Dkt. No. 62 (N.D. Ga. Dec. 1, 2005) ............................................ 18

*In re Managed Care Litig.*,
  No. 00-1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) ............................... 18

*In re Pediatric Servs. of Am., Inc. Sec. Litig.*,
  No. 99-0670 (N.D. Ga. Mar. 15, 2002) ................................................................. 8

*In re Profit Recovery Grp. Int'l, Inc. Sec. Litig.*,
  No. 00-01416, Dkt. No. 203 (N.D. Ga. May 26, 2005) ......................................... 18

*In re Profit Recovery Grp. Int'l, Inc. Sec. Litig.*,
  No. 00-1416 (N.D. Ga. May 26, 2005) ................................................................... 8

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) ........................................................... 13, 17

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) .......................................................................... 20

# TABLE OF AUTHORITIES
## (continued)

Page

*James v. JPMorgan Chase Bank, N.A.*,
No. 15-cv-2424, 2017 WL 2472499 (M.D. Fla. June 5, 2017) ........................................... 21

*Johnson v. Ga. Highway Exp., Inc.*,
488 F.2d 714 (5th Cir. 1974) ......................................................................... 2, 8

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015) ........................................................................ 11, 19

*Lees v. Anthem Ins. Cos.*,
No. 13-1411, 2015 WL 3645208 (E.D. Mo. June 10, 2015) ............................................. 19

*Mahoney v. TT of Pine Ridge, Inc.*,
No. 17-80029, 2017 WL 9472860 (S.D. Fla. Nov. 20, 2017) ............................................ 20

*Malta v. Fed. Home Loan Mortg. Corp.*,
No. 10-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ................................................ 11

*Markos v. Wells Fargo Bank, N.A.*,
No. 15-1156, Dkt. No. 34-1 (N.D. Ga. June 29, 2016) .................................................. 11

*Martin v. Dun & Bradstreet, Inc.*, No. 12-215, 2014 WL 9913504 (N.D. Ill. Jan.
16, 2014) ......................................................................................... 19, 21

*McLendon v. PSC Recovery Sys., Inc.*,
No. 06-1770, 2009 WL 10668635 (N.D. Ga. June 2, 2009) ............................................. 10, 13

*Morgan v. Pub. Storage*,
301 F. Supp. 3d 1237 (S.D. Fla. 2016) .................................................................. 8

*Pinto v. Princess Cruise Lines, Ltd.*,
513 F. Supp. 2d 1334 (S.D. Fla. 2007) ............................................................. 10, 13, 19

*Prater v. Medicredit, Inc.*,
No. 4:14-cv-00159, 2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) ....................................... 21

*Prather v. Wells Fargo Bank, N.A.*,
No. 15-4231, Dkt. No. 35-2 (N.D. Ga. Feb. 22, 2017) .................................................. 11

*Prowant v. Fannie Mae*,
No. 14-cv-03799, Dkt. No. 109 (N.D. Ga. Nov. 27, 2018) .............................................. 20

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
297 F.R.D. 683 (S.D. Fla. 2014) ....................................................................... 20

*Sandoe v. Bos. Sci. Corp.*,
No. 18-11826, 2019 WL 5424203 (D. Mass. Oct. 23, 2019) ............................................ 15

*Soto v. The Gallup Org.*,
No. 13-61747, Dkt. No. 95 (S.D. Fla. Nov. 24, 2015) .................................................... 19

*Tomeo v. CitiGroup, Inc.*,
No. 13-4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) ............................................. 15

*Vandervort v. Balboa Capital Corp.*,
8 F. Supp. 3d 1200 (C.D. Cal. 2014) ................................................................... 19

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1995) ................................................................................ 1, 7, 8, 18

*Wilkins v. HSBC Bank Nevada, N.A.*,
   No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ...................................................... 11

## OTHER AUTHORITIES

Mot. for Preliminary Approval, *Hanley v. Tampa Bay Sports & Ent. LLC*,
   M.D. Fla. No. 19-550, Dkt. No. 78 (Nov. 26, 2019) ............................................................ 18

2000783.5

## I.      __INTRODUCTION__

Class Counsel respectfully move the Court for an award of (1) attorneys'
fees and costs in the total amount of $725,000, which is one-third of the
$2,175,000.00 non-reversionary Settlement Fund that Class Counsel obtained for
the Class; and (ii) service awards to Class Representative Grogan in amount of
$10,000 and to Class Representatives Severson, Bryant, and Belozerov in the
amount of $5,000 each (for a total of $25,000).[1]  Class Counsel respectfully submit
that the requested fees, costs, and service wards, are fair, reasonable, consistent
with the law of the Eleventh Circuit and this District, and should be approved.

Class Counsel seek fees under the percentage-of-the-fund method.  Long-
standing Eleventh Circuit authority provides that this is the appropriate method for
calculation and awarding fees in a common fund settlement.  *See Camden I Condo.
Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991).  Furthermore, courts in
this Circuit have long held that fee awards of one-third of the common fund are
appropriate, in addition to reimbursement of reasonable costs.  *See Waters v. Int'l
Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1995) (approving fee
request of one-third of common fund); *In re Arby's Rest. Grp., Inc. Data Sec.*

---

[1] The Settlement Agreement is attached to Plaintiffs' Unopposed Motion for
Preliminary Approval of Class Settlement at Dkt. No. 93-1.  All capitalized terms
in this Motion carry the same meaning as defined in the Settlement, unless
otherwise stated.

- 1 -

*Litig.*, No. 17-55555, 2019 WL 2720818, at *2 (N.D. Ga. June 6, 2019) (same).

Consistent with controlling authority, Class Counsel seek 33-1/3% of the non-reversionary cash Settlement Fund, inclusive of, and not in addition to, their costs.  The relevant factors established under this Court's precedent in *Johnson* amply support the fee award requested here.  *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  Moreover, although the settlement claims process is ongoing, to date not a single one of the 306,626 Class Members who received due process class notice have objected to the Settlement or to Class Counsel's fee request.  The Service Awards are also well-justified for each Class Representative's efforts on behalf of the class, including Mr. Grogan's provision of documents, discussions with Class Counsel over the course of eighteen months, and sitting for deposition, and all Representatives' willingness to step forward to sue Aaron's on behalf of the Class.  The Class Representatives' efforts to pursue Class recovery came to fruition, and yielded excellent relief for the Class.

For these reasons, and as detailed below, Class Counsel respectfully submit that the fee request and Service Awards are supported by the authorities in this Circuit and this District, and the relevant factors, and should be approved.

## II.   BACKGROUND

### A.   The Settlement Fund and cash payments to the Class

The Settlement requires Aaron's to fund a non-reversionary cash Settlement Fund of $2,175,000.00.  *See* Settlement at §§ 2.34, 4.02.  Each Class Member who submits a simple claim form online, by phone, or by mail, and whose claim is verified as valid, will receive a Cash Award.  Under no circumstances will any amount of the Settlement Fund revert to Aaron's.

The amount of each Cash Award is the claiming Class Member's pro rata share of the Settlement Fund.  If uncashed checks permit a second pro rata distribution equal to or greater than $1.00 per qualifying claimant, the Claims Administrator will make a second pro rata distribution to Settlement Class Members who cashed settlement checks.  Only if a second distribution is not made, or if checks remain uncashed after the second distribution, will the uncashed amount be distributed *cy pres*, subject to Court approval.  *See id.* at §§ 7.06(e)-(f).

Although it is still early in the Claims Period, the response from the Class has been uniformly positive.  As of this submission, more than 7,300 claims have been received, with approximately two and half months remaining before the claims deadline.  *See* Hutchinson Decl. at ¶ 15.  More than 385 potential class members have contacted Class Counsel after receiving notice.  *Id.*; Wilson Decl. at

- 3 -

¶ 11.  And not a single Class Member has opted out or filed an objection to the Settlement or to Class Counsel's fee request.  Hutchinson Decl. ¶ 15.  Class Counsel will submit to the Court a report on final claims numbers before the fairness hearing.

**B.      Class Counsel's prosecution of this matter**

Class Counsel worked hard to obtain the large, non-reversionary cash Settlement Fund for the Class.  Before filing the *Grogan* action, Plaintiffs' counsel thoroughly researched and investigated Aaron's' practices and Plaintiffs' legal claims by, among other things, interviewing several Class Members, reviewing Class Members' pertinent documents and information, and researching relevant TCPA case law and regulations.  Hutchinson Decl. ¶ 3.

On June 8, 2018, Plaintiff Grogan filed this action alleging that Aaron's made calls to his cell phone using an automatic telephone dialing system and/or prerecorded voice without prior express consent.  *Id.* at ¶ 4; Dkt. No. 1.  Over the next 18 months, the parties engaged in active discovery and motion practice. Hutchinson Decl. ¶ 11.  Aaron's filed a motion to stay, *see* Dkt. No. 35, which Plaintiffs successfully defeated.  Dkt. Nos. 39, 48; Hutchinson Decl. ¶ 5.

Discovery was extensive and contentious.  Aaron's produced, and Plaintiffs reviewed, more than 3,716 pages of documents and extensive data files.

- 4 -

Hutchinson Decl. ¶ 6.  Plaintiffs deposed two of Aaron's senior executives under

Rule 30(b)(6).  *Id*.  And Plaintiff Grogan responded to 39 requests for production,

20 interrogatories, and sat for deposition.  *Id.*  Plaintiffs retained experts regarding

data analytics and telecommunications technology.  *See* Dkt. Nos. 78-4, 78-5;

Hutchinson Decl. ¶ 7.  Each expert produced a full report in support of class

certification and responded to subpoenas collectively seeking 31 categories of

documents and data.  Hutchinson Decl. ¶ 7.

Success in those efforts was critical to the development of this case.

Plaintiffs obtained the class-wide "wrong-number call data" essential to class

certification and proof on the merits only after filing a motion to compel, *see* Dkt.

No. 54, a dispute resolved by agreement only after judicial intervention.  *See* Dkt.

Nos. 62, 64, 67, 69; Hutchinson Decl. ¶ 8.

After hotly contested motion practice and discovery, the parties agreed to

explore mediation.  Hutchinson Decl. ¶ 9.  The mediation sessions were conducted

under the direction of respected and highly experienced private mediator Mr.

Rodney Max, Esq.  *Id.*  Although the mediation was productive, the parties were

unable to reach a resolution.  *Id.* ¶ 10.

Class Counsel returned to litigation, and filed a Motion for Class

Certification on December 9, 2019.  Hutchinson Decl. ¶ 11; Dkt. No. 78.  Only

after a second mediation session with Mr. Max did the parties reach an agreement in principle on February 10, 2020.  Hutchinson Decl. ¶ 12.

The excellent relief obtained for the Class is the result of Class Counsel's diligent prosecution of this case on the merits, extensive discovery with the aid of experts, and regular involvement of the Class Representatives.

## III.   ARGUMENT

### A.   Class Counsel should be compensated with a percentage of the common fund created through their efforts.

It is well established that, when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained.  *See, e.g.*, *Camden I Condo. Ass'n*, 946 F.2d at 771; *In re Food Serv. Equip. Hardware Antitrust Litig.*, No. 10-1849, 2011 WL 13175440, at *2 (N.D. Ga. Dec. 28, 2011).  The common benefit doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense."  *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 349 (N.D. Ga. 1993) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  Furthermore, "in order to encourage 'private attorney general' class actions brought to enforce laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate

clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066, 2012 WL 12540344, at *1 (N.D. Ga. Oct. 26, 2012) (internal quotation marks and alterations omitted).

Where, as in this case, Class Counsel's efforts result in a common, all-cash fund that provides direct monetary payments to the Class, attorneys' fees are determined as a percentage of the fund that Class Counsel's efforts created for the Class's benefit. *See Camden I*, 946 F.2d at 774 ("[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."). This Court has substantial discretion to approve and award the amount of fees. *See Waters*, 90 F.3d at 1294 (affirming fee award of one-third of the common fund). There is "no hard and fast rule [to determine fees as a percentage of common fund] because the amount of any fee must be determined upon the facts of each case." *In re Equifax Inc. Customer Data Security Breach Litig.*, No. 17-2800, 2020 WL 256132, at *31 (N.D. Ga. Mar. 17, 2020), *appeals filed*, 11th Cir. No. 20-10249 (citing *Camden I*, 946 F.2d at 775).

In this Circuit, fee awards of one-third of a common fund are common. *See Waters*, 190 F.3d at 1294 (affirming award of one-third attorneys' fees in common fund case); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1257 (S.D. Fla. 2016)

- 7 -

("[A] fee award of 33% . . . is consistent with attorneys' fee awards in federal class actions in this Circuit."); *In re Profit Recovery Grp. Int'l, Inc. Sec. Litig.*, No. 00-1416 (N.D. Ga. May 26, 2005) (awarding one-third of settlement fund plus expenses); *In re Clarus Corp. Sec. Litig.*, No. 00-2841 (N.D. Ga. Jan. 6, 2005) (same); *In re Pediatric Servs. of Am., Inc. Sec. Litig.*, No. 99-0670 (N.D. Ga. Mar. 15, 2002) (same).

Class Counsel are also entitled to reimbursement of costs incurred as a result of their efforts to secure substantial benefits for the class. *See, e.g.*, *In re Domestic Air Transp.*, 148 F.R.D. at 306. Here, though entitled to recover costs in addition to a reasonable fee, Class Counsel seek an award of one-third of the fund *inclusive* of costs. In prosecuting this case, Class Counsel have incurred $58,821 in out-of-pocket costs, making the true fee request 30.6% (($725,000 - $58,821) / $2.175 million). *See* Hutchinson Decl. ¶ 24; Wilson Decl. ¶ 17.

### B. The *Johnson* factors support the requested fee

The Eleventh Circuit has identified a list of factors potentially relevant in determining the appropriate percentage to be awarded as a fee. First are twelve factors identified in *Johnson*, 488 F.2d at 717-19: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the

- 8 -

attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is

fixed or contingent; (7) the time limitations imposed by the client or the

circumstances; (8) the amount involved and the results obtained; (9) the

experience, reputation, and ability of the attorneys; (10) the "undesirability" of the

case; (11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.  *Camden I*, 946 F.2d at 772 n.3, 776.  "Other pertinent

factors are the time required to reach a settlement, whether there are any

substantial objections by class members or other parties to the settlement terms or

the fees requested by counsel, any non-monetary benefits conferred upon the class

by the settlement, and the economics involved in prosecuting a class action.  In

most instances, there will also be additional factors unique to a particular case

which will be relevant to the district court's consideration."  *Id.* at 775.

　　　As is evident from the number of factors, district courts are not required to

evaluate each and every factor.  Rather, "[t]he district court's reasoning should

identify all factors upon which it relied and explain how each factor affected its

selection of the percentage of the fund awarded as fees."  *Id*; *see also Gunthert v.

Bankers Standard Ins. Co.*, No. 16-00021, 2019 WL 1103408, at *5 (M.D. Ga.

Mar. 8, 2019) (factors are "guidelines and are not exclusive");  *In re Checking

Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) ("These

- 9 -

factors are merely guidelines[.]").

Here, each of the relevant *Johnson* factors show that the fee request is reasonable and should be awarded.

### 1. Class Counsel obtained an excellent result for the Class.

The eighth *Johnson* factor—the result obtained for the class—is "[t]he most important single element in determining the appropriate fee to be awarded class counsel out of a common fund."  *McLendon v. PSC Recovery Sys., Inc.*, No. 06-1770, 2009 WL 10668635, at *3 (N.D. Ga. June 2, 2009) (citation and alteration omitted) (approving one-third fee award from common fund settlement); *see also Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) ("The result achieved is a major factor to consider in making a fee award.").  This Settlement is an excellent result for the Class, and supports the requested fee.

The Settlement requires Aaron's to pay $2,175,000 in non-reversionary cash, a terrific result both in the abstract and measured against other TCPA class settlements.  Against a class number list of 306,626, this amounts to $7.10 per class member.[2]  The value per potential claimant is certainly higher given that the

---

[2] The Settlement was based on an estimate of ~297,000 "wrong party" coded numbers in Aaron's database at the time of negotiation, with the expectation that the number would grow linearly through the preliminary approval date.  Settlement § 4.01.  The final number of 306,626 (associated with 254,335 distinct customer ID numbers) was consistent with that expectation.  Hutchinson Decl. ¶ 14.

"wrong party" coded numbers may include some numbers belonging to customers (who are not in the Class).  And because not every class member will make a claim, the amount of money actually received by each class member who does make one is likely to be much more than $7.10.

The result is excellent when measured against nearly 30 years of TCPA settlements:

| Case | Per-Member Recovery |
|------|---------------------|
| *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, Dkt. No. 35-2 (N.D. Ga. Feb. 22, 2017) | $4.65 |
| *Cross v. Wells Fargo Bank, N.A.*, No. 15-1270, Dkt. No. 45-1 (N.D. Ga. Aug. 11, 2016) | $4.75 |
| *Markos v. Wells Fargo Bank, N.A.,* No. 15-1156, Dkt. No. 34-1 (N.D. Ga. June 29, 2016) | $4.98 |
| *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) | $4.41 |
| *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) | $4.31 |
| *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) | $1.20 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) | ~$4.00 |

Most importantly, the Settlement provides Class Members with real monetary relief, despite the fact that this is a purely statutory damages case involving nominal economic damages or actual damages (such as harassment and invasion of privacy) that are difficult to quantify.  This Settlement provides direct, monetary benefits to Class Members who realistically would not have filed their

own individual lawsuits because each Class Member's case would have been too small to bring on its own.  In view of the quality and quantity of the relief obtained for the Class, and the amount per Class Member recovered when compared to other TCPA cases, the eighth *Johnson* factor strongly supports the fee request here.

### 2. Class Counsel undertook the litigation at significant risk with no guarantee of recovery.

The fourth (preclusion of other employment), sixth (contingent fee), and tenth (undesirability of the case) *Johnson* factors all speak to the risks undertaken by Class Counsel in pursuing this case.  Evaluation of that risk supports the requested fee.

*First*, Class Counsel prosecuted this case on an entirely contingent basis, and to date have spent more than 1,030 hours and $$58,821 in out-of-pocket costs for the benefit of the Class with no guarantee of any recovery.  Hutchinson Decl. ¶¶ 22, 24-25; Wilson Decl. ¶¶ 14, 17.  That fact supports the requested fee.  *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."); *see also In re Equifax*, 2020 WL 256132, at *33 ("A larger award is justified because if the case is lost a lawyer realize[s] no return for investing time and money in the case."); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001) ("A contingency fee arrangement often justifies an increase in the

- 12 -

award of attorneys' fees.") (citation omitted).

*Second*, that commitment necessarily precluded time and expenses from being committed to different matters.  Hutchinson Decl. ¶ 26; Wilson Decl. ¶ 12. *See McLendon*, 2009 WL 10668635 at *2 (approving one-third fee award and explaining that "[i]f Class Counsel had allocated this time to other legal matters. . . Class Counsel [may have] earned significantly more than the sum requested here."); *In re Equifax*, 2020 WL 256132 at *33 ("[B]ut for the time and effort [Class Counsel] spent on this case the plaintiffs' lawyers would have spent significant time on other matters . . . the bulk of the work was done by a relatively small number of senior lawyers, and demanded their full attention.").  *Third*, this outcome was no guarantee.  *See Pinto*, 513 F. Supp. 2d at 1340 ("The relevant risks must be evaluated from the standpoint of Plaintiffs' counsel as of the time they commenced the suit and retroactively with the benefit of hindsight.").  This case carried significant risks the day it was filed, some of which have manifested. Most apparent, this case was filed after the FCC's 2015 order adopting an expansive definition of ATDS was vacated by the D.C. Circuit.  *See ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).  That vacatur left open questions about whether the FCC's longstanding position that a device that merely dials a stored list of telephone numbers can trigger liability under the TPCA.  It was unclear

- 13 -

whether courts would deem pre-2015 FCC orders binding, and, if not, how they would address such devices in TCPA cases as questions of first impression. At least in this Circuit, that risk has played out to Plaintiffs' disadvantage: the Eleventh Circuit recently adopted a narrow definition of ATDS, a ruling that threatens to zero out much of the relief sought here. *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020); *see also Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020) (granting writ of certiorari on this question).

The risk in this case did not stop with the definition of an ATDS. Class Counsel are experienced TCPA practitioners and are well-aware that TCPA class actions regularly founder on the merits or at class certification. Hutchinson Decl. ¶ 17. For example, during the pendency of this case, there was a pending Supreme Court appeal in which the petitioner had asked the Court to strike down the entire prohibition on autodialed calls as unconstitutional. *See Barr v. Am. Ass'n of Political Consultants Inc.*, No. 19-631, 2020 WL 3633780 (U.S. July 6, 2020). If that case came out the wrong way, every claim asserted in this case would no longer have been viable.

Class certification posed a particular risk here. TCPA claims are generally low-value and can only be viable on a class basis. But although many courts have

- 14 -

certified so-called "wrong-number" classes, others have declined to do so, finding

the class not ascertainable, the individual question of who is a non-customer

predominating over common questions, or the process of identifying class

members unmanageable.  *See, e.g.*, *Sandoe v. Bos. Sci. Corp.*, No. 18-11826, 2019

WL 5424203 (D. Mass. Oct. 23, 2019) (denying class certification); *Tomeo v.

CitiGroup, Inc.*, No. 13-4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) (same);

*Davis v. AT&T Corp.*, No. 15-2342, 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017)

(same).  Further, Aaron's stated that its intent to challenge, on a call-by-call basis,

whether calls that were flagged in Aaron's system as "wrong number" calls were in

fact made to non-customers, and thus whether it may have had consent to make

those calls, arguments that some courts have accepted as a basis to deny class

certification.

### 3.  Class Counsel are experienced TCPA and class action lawyers who delivered effective representation to the Class.

The first *Johnson* factor, "time and labor," is a measure of Class Counsel's

efforts to prosecute the case and obtain relief for the Class.  The Court looks to the

amount of work performed in view of the complexity of the case and the quality of

Class Counsel, and the result obtained.  *See In re Equifax*, 2020 WL 256132, at

*32; *see Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1213 (S.D.

Fla. 2006) ("The key consideration simply is whether Class Counsel's claimed

hours are reasonable given the circumstances of the case and the results achieved."). The ninth Johnson factor examines the "experience, reputation, and ability of the attorneys." *In re Domestic Air Transp.*, 148 F.R.D. at 349 n. 72. Both factors support the requested fee.

*First*, Class Counsel devoted significant time to obtain relief for the Class. This case was litigated over 18 months to the verge of class certification, and involved contested motions practice, extensive discovery, and depositions. *See* Section II.B. In total, Class Counsel committed 1031.1 hours to this case. Hutchinson Decl. ¶ 22; Wilson Decl. ¶ 17.

The quality of Class Counsel's efforts is demonstrated by the final result: a $2,175,000 non-reversionary cash fund providing a per-Class member recovery amount significantly higher than comparable TCPA common funds, achieved in the face of significant litigation risk. *See George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1377 (N.D. Ga. 2019) (discussing extensive discovery and motion practice as demonstrative of quality of representation and approving one-third fee request); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").

*Second*, Class Counsel's diligence and efforts to secure this result for the

Class reflect their experience, reputation, and ability.  *See In re Equifax*, 2020 WL 256132, at *33; *In re Sunbeam*, 176 F. Supp. 2d at 1334.  Class Counsel are veteran class action attorneys who have successfully litigated complex consumer cases in this Circuit and nationwide.  Class Counsel have extensive experience in litigating TCPA class actions, and are responsible for many of the largest TCPA settlements recorded.  *See* Dkt. No. 93-2 (Hutchinson Decl.) at ¶¶ 6-21; Dkt. No. 93-3 (Wilson Decl.) at ¶¶ 4-6.

### 4. The requested fee award aligns with awards in similar cases and with the customary fees in contingent class actions.

The fifth and twelfth *Johnson* factors examine whether the requested fee is reasonable when juxtaposed against fee awards in similar cases, and against customary fees awarded for contingency-based class representation.

*First*, in this Circuit, a fee of 33% of the common fund is considered appropriate especially when plaintiffs' counsel undertake class representation on a contingent-fee basis.  *See In re Equifax*, 2020 WL 256132, at *33 (noting customary fee in complex class action litigation ranged between 33.3 and 40%); *In re Arby's*, 2019 WL 2720818, at *4 ("Awards of up to 33% of the common fund are not uncommon in the Eleventh Circuit, and especially in cases where Class Counsel assumed substantial risk by taking complex cases on a contingency basis."); *see also Waters*, 190 F.3d at 1295 (affirming one-third fee award); *Dukes*

*v. Air Canada*, No. 18-2176, 2020 WL 487152, at *7 (M.D. Fla. Jan. 27, 2020) (collecting cases).[3]  Class Counsel's fee request falls well below the 33% mark, given that it is inclusive of costs.  *See* Hutchinson Decl. ¶ 24; Wilson Decl. ¶ 17.

One apt comparator is the Middle District of Florida's recent decision in *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 19-550, 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020).  In that TCPA class settlement, the court awarded a fee of 35% based on a $2.25 million settlement that was only *partially* ($1.4 million) non-reversionary.[4]  Here, under no circumstances will any money revert to Aaron's. This case thus presents a smaller fee request based on a better settlement.

*Second*, the requested fee award of one-third of the common fund comports with recent fee awards in TCPA class actions.  *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 502-03 (N.D. Ill. 2015) (approving 36% fee award); *Lees v. Anthem Ins. Cos.*, No. 13-1411, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (approving 34% fee award); *Soto v. The Gallup Org.*, No. 13-61747, Dkt. No. 95

---

[3] *See, e.g.*, *Allapattah Servs.*, 454 F. Supp. 2d at 1204 (awarding 31-1/3%, with costs); *In re: Healthtronics Surgical Servs., Inc. Sec. Litig.*, No. 03-02800, Dkt. No. 62 (N.D. Ga. Dec. 1, 2005) (33% plus costs); *In re Profit Recovery Grp. Int'l, Inc. Sec. Litig.*, No. 00-01416, Dkt. No. 203 (N.D. Ga. May 26, 2005) (33-1/3%, plus costs); *In re Managed Care Litig.*, No. 00-1334, 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003) (awarding 35.5% in fees and costs).
[4] *See* Mot. for Preliminary Approval, *Hanley v. Tampa Bay Sports & Ent. LLC*, M.D. Fla. No. 19-550, Dkt. No. 78, at 8 (Nov. 26, 2019).

(S.D. Fla. Nov. 24, 2015) (approving 33.3% award).[5]

*Third*, the requested fee is consistent with typical fee arrangements in commercial complex litigation. *See Pinto*, 513 F. Supp. 2d at 1341 ("In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients."); *Allapattah Servs.*, 454 F. Supp. 2d at 1209 ("A fee of 31 and 1/3% to Class Counsel is well within the range of customary fees.").  And, of course, in private litigation, the client typically pays out-of-pocket costs; here, Class Counsel request a fee *inclusive* of, not in addition to, such costs.

### C.   The Class Representative Service Awards are reasonable

In this Circuit, class representative service awards are regularly approved to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (citation omitted) (awarding $300,000 service payments to each class representative).  Courts also recognize that "[i]n

---

[5] *See also, e.g.*, *Hageman v. AT&T Mobility LLC, et al.*, No. 13-50, Dkt. No. 68 (D. Mont. Feb. 11, 2015) (awarding 33%, inclusive of costs); *In re Capital One*, 80 F. Supp. 3d at 803-807 (modified fee structure including 36% of the first $10 million); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (33%); *Cummings v. Sallie Mae*, No. 12-9984, Dkt. No. 91 (N.D. Ill. May 30, 2014) (33%, inclusive of costs); *Hanley v. Fifth Third Bank*, No. 12-1612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) (33%, inclusive of costs); *Desai v. ADT Sec. Servs., Inc.*, 11-1925, Dkt. No. 243 (N.D. Ill. June 21, 2013) (33%, inclusive of costs); *Martin v. Dun & Bradstreet, Inc.*, No. 12-215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (more than 33-1/3%).

- 19 -

instituting litigation, representative plaintiffs act as private attorneys general seeking a remedy for what appears to be a public wrong." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (citation omitted). Thus, "courts have stressed that incentive awards are efficacious ways of encouraging members of a class to become class representatives," *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003), "because a named plaintiff is an essential ingredient of any class action." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Class Counsel request a Service Award of $10,000 for Class Representative Grogan; and Service Awards of $5,000 for Class Representatives Severson, Bryant, and Belozerov, awards comfortably within the normal range. *See Prowant v. Fannie Mae*, No. 14-cv-03799, Dkt. No. 109 (N.D. Ga. Nov. 27, 2018) (approving $10,000 to named plaintiffs as a service award); *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029, 2017 WL 9472860, at *13 (S.D. Fla. Nov. 20, 2017) (finding incentive award of $10,000 was appropriate in TCPA case); *James v. JPMorgan Chase Bank, N.A.*, No. 15-cv-2424, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (approving incentive award of $5,000 in TCPA case).[6]

---

[6] *See also Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving $25,000 service award to TCPA class representative); *Martin*, 2014 WL 9913504, at *3 (approving $20,000 service award to TCPA class representative); *Prater v.*

*Footnote continued on next page*

Here, Grogan and Bryant stepped forward to serve as the face of a lawsuit on behalf of Settlement Class Members.  Severson and Belozerov were likewise willing to step forward and represent the Class.  Their participation is this matter was a key factor driving settlement as it underscored the class-wide nature of Plaintiff's allegations.  Hutchinson Decl. ¶¶ 27-28.  Without their willingness, Aaron's violations of the TCPA would have gone unremedied and the Class would have received nothing.  Plaintiff Grogan also committed significant time and effort in litigating this case, including responding to 39 requests for production and 20 interrogatories, and sitting for deposition—justifying his award of $10,000.  Hutchinson Decl. ¶ 28.  The remaining Class Representatives came forward and stood ready to file lawsuits against Aaron's (Ms. Bryant previously filed a class action but dismissed upon learning her claims overlapped with those asserted here), justifying their awards of $5,000.  *Id.*

## IV.  <u>CONCLUSION</u>

Class Counsel respectfully request that the Court (1) award attorneys' fees and costs in the total amount of $725,000; (2) award service awards to Class Representative Grogan in the amount of $10,000 and to Class Representatives

---

*Footnote continued from previous page*
*Medicredit, Inc.*, No. 4:14-cv-00159, 2015 WL 8331602, at *4 (E.D. Mo. Dec. 7, 2015) (awarding $20,000 in TCPA class settlement).

Severson, Bryant, and Belozerov in the amount of $5,000 each; and (3) authorize

co-lead Class Counsel to allocate the awarded fees and costs among Class Counsel.

Respectfully submitted,

Dated:  July 17, 2020

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

*/s/ Daniel M. Hutchinson*

Daniel M. Hutchinson (*pro hac vice*)
dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:   (415) 956-1000
Facsimile:    (415) 956-1008

Jonathan D. Selbin (*pro hac vice*)
Email:  jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Andrew R. Kaufman (*pro hac vice*)
Email:  akaufman@lchb.com
222 Second Avenue South, Suite 1640
Nashville, Tennessee 37201
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965

**MEYER WILSON CO., LPA**
Matthew R. Wilson (*pro hac vice*)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice*)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

- 22 -

**WADE, GRUNBERG & WILSON, LLC**
G. Taylor Wilson
State Bar No. 460781
twilson@wgwlawfirm.com
1230 Peachtree Street N.E., Ste. 1900
Atlanta, GA 30309
Telephone:   (678) 787-0216

*Attorneys for Plaintiffs and the Proposed Class*

- 23 -

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Local Rules 5.1.C and 7.1.D of the Northern District of

Georgia, that the foregoing was prepared in 14-point Times New Roman Font.


*/s/ Andrew R. Kaufman*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Andrew R. Kaufman*

2000783.5